# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK E. ROBINSON,                    :
                                     :
    Plaintiff,                   :          Civil Action No.:      15-444 (RC)
                                     :
    v.                           :          Re Document Nos.:      63, 64, 70
                                     :
DISTRICT OF COLUMBIA,                :
                                     :
    Defendant.                   :

## MEMORANDUM OPINION

### GRANTING IN PART PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF, BACK PAY, AND ATTORNEYS' FEES

## I. INTRODUCTION

Plaintiff Mark Robinson, a sergeant in the District of Columbia's (the "District")

Metropolitan Police Department ("MPD"), sued the District under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the District of Columbia Human Rights

Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA"), alleging that he was denied the opportunity to

work in a particular MPD unit because of race discrimination and retaliation.  Following a trial,

the jury returned a verdict in favor of Mr. Robinson, awarding him $750 in compensatory

damages.  Having received a favorable jury verdict, Mr. Robinson seeks from the Court

injunctive relief, an award of back pay, and attorneys' fees.  Upon consideration of the parties'

filings, the Court concludes that Mr. Robinson is entitled to all three forms of relief, though not

to the extent he requests.  Accordingly, the Court will grant in part and deny in part Mr.

Robinson's motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Mr. Robinson's lawsuit was prompted by his desire to work in the Automated Traffic Enforcement Unit ("ATEU")—an MPD division created to organize traffic camera photographs, analyze evidence of traffic violations, and issue citations—and his inability to secure that work. *See generally* Affidavit of Mark E. Robinson ("Robinson Affidavit I"), ECF No. 24-1. Mr. Robinson began working full time in the ATEU in 2008, and he became sufficiently proficient in the unit's functions that he was tasked with training and certifying MPD officers to work in the ATEU Overtime Program, which allowed those officers to supplement their normal workload with ATEU overtime work. *See id.* ¶¶ 11–16.

In late-2011, Mr. Robinson was transferred from the ATEU to MPD's Special Events Branch ("SEB"), ostensibly because MPD was "civilianizing" the ATEU.[2] *Id.* ¶ 18. After Mr. Robinson's transfer to the SEB, while MPD officers could no longer work full time in the ATEU, the ATEU Overtime Program continued. *Id.* ¶¶ 17–18. During his time in the SEB, Mr. Robinson sought reassignment to the ATEU and the opportunity to participate in the ATEU Overtime Program. *Id.* ¶¶ 18–23. His requests were denied by his supervisor, Lisa Sutter. *Id.* ¶¶ 21, 24, 34.

Mr. Robinson brought this action in 2015, alleging that he was transferred out of the ATEU, denied reassignment to the ATEU, and denied the opportunity to participate in the ATEU Overtime Program between February 2014 and May 2015, all because of his race or in retaliation

---

[1] This Court's opinion addressing the District's motion for summary judgment, *Robinson v. District of Columbia ("Robinson II")*, 275 F. Supp. 3d 95, 99–101 (D.D.C. 2017), provides additional background detail.

[2] Civilianization is a process in which sworn police officers are replaced with civilian staff who have limited or zero police powers, and who provide administrative or specialist support to police functions.

for complaining about racial discrimination.  *See generally* Compl., ECF No. 1-3.  After several rounds of briefing, the case proceeded to trial on Mr. Robinson's claim that he was denied ATEU overtime opportunities because of discrimination or retaliation.  *See Robinson v. District of Columbia ("Robinson I")*, 139 F. Supp. 3d 448, 451 (D.D.C. 2015) (dismissing Mr. Robinson's claims brought under 42 U.S.C. § 1981(a)); *Robinson II*, 275 F. Supp. 3d at 104–05 (dismissing Mr. Robinson's claims of retaliation and discrimination arising from his reassignment from the ATEU to the SEB).  The Court dismissed Mr. Robinson's retaliation claim at the end of his case, leaving only Mr. Robinson's discrimination claim for the jury's deliberation.  *See* Fed. R. Civ. P. 50(a)(2); Minute Order, Mar. 13, 2018.  On this claim, the jury found that Mr. Robinson's SEB supervisor in 2014 and 2015, Ms. Sutter, discriminated against him by denying him ATEU overtime opportunities, and the jury accordingly awarded Mr. Robinson $750 in damages.  *See* Verdict Form, ECF No. 56.

Shortly after the trial, Mr. Robinson filed a motion asking the Court to (1) enjoin the District from excluding Mr. Robinson from ATEU overtime opportunities which are not filled by officers actively working within the ATEU; (2) enjoin the District from retaliating against Mr. Robinson; and (3) enjoin the District from discriminating against Mr. Robinson on the basis of his race or color.  Mot. Injunctive Relief ("Inj. Mot.") at 3, ECF No. 64.  Mr. Robinson also filed motions for back pay, Mot. Award Back Pay ("Pay Mot."), ECF No. 70, and attorneys' fees, Mot. Attys' Fees Costs ("Fee Mot."), ECF No. 63-1.[3]

Those motions are now ripe for the Court's consideration.  The Court concludes that while Mr. Robinson is entitled to all three types of relief, he is not entitled to all injunctive relief

---

[3] When referencing these motions, their accompanying memoranda of points and authorities, and their related opposition and reply briefs, the Court cites to the page numbers automatically generated by ECF.

sought, nor is he entitled to the full amounts of back pay and attorneys' fees sought.

Accordingly, as explained below, the Court grants Mr. Robinson's motions in part.

## III.  LEGAL STANDARDS

### A.  Equitable Relief

"[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Franks v. Bowman Transp. Co., Inc.,* 424 U.S. 747, 763 (1976) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418 (1975)). Accordingly, Title VII expressly provides for a wide range of remedies:

> If the court finds that the [defendant] has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1).

In considering what remedy is appropriate, a court "must strive to grant 'the most complete relief possible.'" *Lander v. Lujan,* 888 F.2d 153, 156 (D.C. Cir. 1989) (quoting *Franks,* 424 U.S. at 764).  In other words, the court's goal is to restore the prevailing plaintiffs, as nearly as possible, to the circumstances they "would have occupied if the wrong had not been committed." *Id.* (internal quotation marks omitted) (quoting *Albemarle Paper,* 422 U.S. at 418–19).  The court has "considerable discretion" to fashion such a remedy.  *Lander,* 888 F.2d at 156; *see also Hayes v. Shalala,* 933 F. Supp. 21, 25 (D.D.C. 1996).[4]

---

[4] Because Mr. Robinson's claims are brought co-extensively under both Title VII and the DCHRA, and because the parties do not address Mr. Robinson's entitlement to equitable relief under the DCHRA, the Court will concern itself only with Mr. Robinson's entitlement to relief under Title VII.

**B.  Attorneys' Fees**

Federal Rule of Civil Procedure 54(d) requires a party seeking attorneys' fees and "related nontaxable expenses" to file a motion with the court.  Fed. R. Civ. P. 54(d)(2)(A).  The motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award."  *Id.* 54(d)(2)(B).  It must also state the amount or provide a fair estimate of the award sought.  *Id.*; *see also Craig v. District of Columbia*, 197 F. Supp. 3d 268, 274 (D.D.C. 2016).

Under Title VII, the Court is authorized, in its discretion, to award "the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs."  42 U.S.C. § 2000e-5(k).  Generally, "[a] reasonable fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys."  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  In awarding appropriate attorneys' fees, a court must conduct a two-step inquiry.  *Craig*, 197 F. Supp. 3d at 274–75 (citing *Does I, II, III v. District of Columbia.*, 448 F. Supp. 2d 137, 140 (D.D.C. 2006)).

First, the court must determine whether the plaintiff is the prevailing party.  *Id.*  Plaintiffs are considered prevailing parties, entitled to attorneys' fees, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 53 (D.D.C. 2013) (internal quotation marks and alterations omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  A litigant need not succeed at every step of the litigation in order to be a prevailing party under Title VII; indeed, "a litigant who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage."  *Craig*, 197 F.

Supp. 3d at 275 (internal quotation marks omitted) (quoting *Ashraf-Hassan v. Embassy of Fr. in the U.S.*, 189 F. Supp. 3d 48, 54–55 (D.D.C. 2016)).

Second, the court must determine whether the plaintiff's fee request is reasonable. *Does I, II, III*, 448 F. Supp. 2d at 140. In calculating a reasonable fee award, a district court must determine: (1) the reasonable hourly rate (or "lodestar") for the services rendered by the plaintiff's attorney, (2) the number of hours reasonably expended on the litigation, and (3) whether the plaintiff has offered specific evidence demonstrating that this is one of the rare cases where a lodestar enhancement or multiplier is appropriate. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 38 (D.D.C. 2011). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. With respect to the number of hours expended, the court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Craig*, 197 F. Supp. 3d at 275 (quoting *Does I, II, III*, 448 F. Supp. 2d at 140). Along the same lines, if a plaintiff "achieved only partial or limited success," the court may conclude that "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," and it may accordingly reduce the award. *Hensley*, 461 U.S. at 436.

Ultimately, the plaintiff bears the burden of establishing both his entitlement to attorneys' fees and the reasonableness of the fees he seeks. *See Covington*, 57 F.3d at 1107; *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 895 (D.C. Cir. 2004). A plaintiff can satisfy this burden by submitting evidence of: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at

1107.  Once the plaintiff has provided such information, a presumption arises that the hours billed are reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing.  *Id*. at 1109–10.

## IV.  ANALYSIS

As described above, the jury concluded that Mr. Robinson's supervisor, Ms. Sutter, withheld ATEU Overtime opportunities from Mr. Robinson because of his race.  Mr. Robinson's rights having been vindicated at trial, he now seeks injunctive relief, back pay, and attorneys' fees.  The Court will address each form of relief in turn, concluding that Mr. Robinson is entitled to a portion of the injunctive relief sought, a portion of the back pay sought, and a portion of the attorneys' fees sought.  Accordingly, it grants each of Mr. Robinson's motions in part.

### A.  Injunctive Relief

First, the Court addresses Mr. Robinson's motion for injunctive relief.  Under 42 U.S.C. § 2000e-5(g)(1), the Court may grant "equitable relief" that "the court deems appropriate" to restore Mr. Robinson, as nearly as possible, to the circumstances he "would have occupied if the wrong had not been committed."  *Lander*, 888 F.2d at 156.  As noted, Mr. Robinson asks the Court to (1) enjoin the District from excluding Mr. Robinson from ATEU overtime opportunities which are not filled by officers actively working within the ATEU; (2) enjoin the District from retaliating against Mr. Robinson; and (3) enjoin the District from discriminating against Mr. Robinson because of his race.  Inj. Mot. at 3.  As explained below, the Court will enjoin the District from excluding Mr. Robinson from the ATEU Overtime Program because of his race, but it will not enjoin the District from discriminating or retaliating against Mr. Robinson going forward, because Mr. Robinson has not demonstrated that such relief is necessary.

### 1. Access to Overtime Opportunities

In response to the jury's finding that he was deprived of ATEU overtime opportunities because of his race, Mr. Robinson argues that the District should be enjoined from excluding him "from consideration from overtime opportunities offered in" the ATEU going forward. Inj. Mot. at 3. The District, on the other hand, argues that this relief would be overbroad because it "contemplates generic overtime opportunities offered in the ATEU," while the jury found that Mr. Robinson was discriminated against with respect to only a subset of those opportunities; those offered in the ATEU Overtime Program. Def.'s Opp'n Pl.'s Mot. Injunctive Relief ("Inj. Opp'n") at 2, ECF No. 66. The District argues that this program was discontinued "in or about May 2015," Mr. Robinson's assertions to the contrary notwithstanding. *Id*. at 3. The District also notes that Mr. Robinson's motion "makes no mention of racial discrimination," which suggests that Mr. Robinson's requested relief would prevent the District from excluding Mr. Robinson from consideration for ATEU overtime opportunities even for non-discriminatory reasons. *Id*. at 2.

The Court declines to determine whether the ATEU Overtime Program is still in operation, and it instead grants Mr. Robinson's requested relief more narrowly than it is framed in his motion. "When fashioning remedies under Title VII, courts attempt not to 'interfere with the policymaking and personnel decisions that rightly belong to public servants.'" *Caudle v. District of Columbia*, 825 F. Supp. 2d 73, 80 (D.D.C. 2011) (quoting *Jones v. Rivers,* 732 F. Supp. 176, 178 (D.D.C. 1990)). Although that goal is ultimately secondary to Title VII's core purpose of making a plaintiff whole, *see Lander,* 888 F.2d at 156, it is nevertheless a factor to be considered. Accordingly, the Court will not require the District to consider Mr. Robinson for *all* overtime opportunities offered in the ATEU. Rather, it enjoins the District from excluding Mr.

Robinson, because of his race, from overtime opportunities in the ATEU Overtime Program, to the extent the Program is still operational and such opportunities are available to officers outside the ATEU unit.

## 2. Retaliation

Mr. Robinson also argues that the District should be enjoined from retaliating against him because of his successful lawsuit. Inj. Mot. at 3. He claims that he is particularly "vulnerable" to retaliation because one of his current supervisors, Captain Robert Glover, testified for the District during the trial about SEB overtime opportunities. *Id.* at 2. Mr. Robinson asserts that Captain "Glover and the [MPD] command staff must be embarrassed and greatly displeased with a verdict that impliedly finds them derelict in their duties," and are likely to seek retribution. Pl.'s Reply Inj. Opp'n at 2, ECF No. 71. The District first counters that this relief "would be entirely disconnected from the [jury's] verdict," which contemplated discrimination but not retaliation. Inj. Opp'n at 3. The District next counters that "Plaintiff has offered no evidence suggesting that he is at risk of retaliation." *Id.* On this point, the District has the stronger argument.

Absent more specific evidence that Mr. Robinson is likely to face retaliation, forbidding retaliation—which is already forbidden by Title VII—is not necessary for the Court to address Mr. Robinson's harm. Ms. Sutter, the individual who discriminated against Mr. Robinson, no longer works for the District. Mr. Robinson's conclusory assertion that "Ms. Sutter may now or in the future be employed by [the District]" does not convince the Court that Ms. Sutter is reasonably likely to ever be in a position to retaliate against Mr. Robinson. Inj. Mot. at 2. Moreover, without additional evidence, the mere fact that Mr. Robinson's current supervisor testified for the District is not enough to show that the supervisor is likely to retaliate against Mr.

Robinson.  Because the Court cannot conclude that there is a "reasonable expectation" that retaliation will occur, the Court declines to impose injunctive relief addressing retaliation. *Bundy v. Jackson*, 641 F.2d 934, 946 n.13 (D.C. Cir. 1981); *see also Spencer v. General Elec. Co.*, 894 F.2d 651, 660 (4th Cir. 1990) (declining to award injunctive relief to Title VII plaintiff where the action involved "an isolated incident of one supervisor run amok," and the supervisor was no longer employed by the defendant) *abrogated on other grounds by Farrar v. Hobby*, 506 U.S. 13 (1992).

### 3. Discrimination

Finally, Mr. Robinson argues that the District should be enjoined from further discriminating against him because of his race.  Inj. Mot. at 3.  Title VII expressly provides that, after a finding of liability, "the court may enjoin the [defendant] from engaging in [the] unlawful employment practice [in question]."  42 U.S.C. § 2000e-5(g)(1).  That said, "[a]lthough enjoining a defendant from further acts of discrimination is a typical remedy in Title VII cases, [the D.C. Circuit] has never held that it is a mandatory remedy . . . ."  *Johnson v. Brock*, 810 F.2d 219, 225 (D.C. Cir. 1987).  And the Seventh Circuit has reasoned that where "the proscribed discriminatory practice has been terminated and there is little likelihood of recurrence," a court need not enjoin the defendant from further acts of discrimination.  *Williams v. General Foods Corp.*, 492 F.2d 399, 407 (7th Cir. 1974); *see also EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987) ("Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination unless the employer proves it is unlikely to repeat the practice").

Neither party's briefing is particularly convincing regarding this issue.  Mr. Robinson argues that "a need persists to protect [him] from further discrimination based on his race or

color," and he again supports this argument with the conclusory assertion that "Ms. Sutter may now or in the future be employed by the Defendant or she may become a contractor of the [District], or she may currently be or become an employee of a contractor of the [District]," and in one of those roles have the opportunity to discriminate against Mr. Robinson. Inj. Mot. at 2. The District rightly notes that this assertion is wholly unsupported by the record, and it argues again that a permanent injunction is unnecessary because Mr. Robinson "has offered no evidence suggesting that he is at risk of racial discrimination in the future," given that Ms. Sutter—who was responsible for the discrimination here—is no longer employed by the District. Inj. Opp'n at 4. The District again has the stronger argument.

As noted above, Mr. Robinson has failed to demonstrate that Ms. Sutter is reasonably likely to ever again discriminate against Mr. Robinson or be placed in a position to do so. Because Ms. Sutter is no longer employed by the District, Mr. Robinson can only speculate that she may at some point become a contractor or employee of the District, and that this hypothetical position would involve oversight of Mr. Robinson. Inj. Mot. at 2. Mr. Robinson's speculation, absent any record evidence, does not give the Court "significant concerns that the District could once again fail to respond to harassment of or discrimination against" Mr. Robinson; the degree of concern that typically warrants enjoining future discrimination. *Jean-Baptiste v. District of Columbia*, 958 F. Supp. 2d 37, 51 (D.D.C. 2013); *see also Bundy*, 641 F.2d at 953 n.13 (holding that an injunction may be appropriate where the defendant "agency has taken no affirmative steps to prevent recurrence of the harassment, and . . . all the harassing employees still work for the agency"); *Caudle*, 825 F. Supp. 2d at 81 (enjoining future retaliation "where both the plaintiffs and the parties responsible for the unlawful action they experienced continue[d] to work for the defendant"); *Bass v. Tanoue,* No. 00-0115, 2001 WL 1659158, at *7 (D.D.C. Dec.

21, 2001) (enjoining the defendant from committing further discrimination when "one official whose conduct was the subject of this action remain[ed] one of plaintiff's supervisors")). The Court declines to enjoin future discrimination against Mr. Robinson because Mr. Robinson has failed to demonstrate that such discrimination may occur. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 864 (7th Cir. 2001) (holding that the "relevant inquiry" in determining whether to enjoin discrimination "is whether the employer's discriminatory conduct could possibly persist in the future").

## B. Back Pay

Second, the Court addresses Mr. Robinson's motion for back pay under 42 U.S.C. § 2000e-5(g)(1). As noted, the purpose of Title VII relief is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle*, 422 U.S. at 418. Accordingly, in devising a back pay award the Court must, "as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination," *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1119 (D.C. Cir. 1999) (per curiam) (internal quotation marks omitted) (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 372 (1977)). That said, as the Sixth Circuit recently stated, "the Title VII plaintiff bears the burden of proving damages with reasonable certainty . . . but back pay in a Title VII case need not be proven with the exactitude of lost profits in a breach of contract case." *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018) (internal citations and quotation marks omitted) (citing *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 520 (6th Cir. 2009); *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1192 (6th Cir. 1983)).

Mr. Robinson seeks back pay to compensate for the ATEU overtime opportunities he lost because of the District's discrimination. He claims that the "omni-present availability of ATEU overtime means that [he] could have worked an extraordinary amount of overtime in any given year," and that in "2014–15, [he] was financially motivated to work extensive overtime hours." Pay Mot. at 13. Based on this reasoning, Mr. Robinson contends that, had he not been discriminated against, he would have worked an additional 1,354 overtime hours in 2014 and 2015, justifying a back pay award of $103,572.43 plus prejudgment interest. *Id*. at 9–10. The District, on the other hand, contends that Mr. Robinson's back pay calculation is "unreasonable and speculative." Def.'s Opp'n Pay Mot. ("Pay Opp'n) at 2, ECF No. 75. The Court accepts Mr. Robinson's assertion that he would have worked additional overtime hours in the absence of discrimination, but the Court concludes that Mr. Robinson has not sufficiently demonstrated that he is entitled to the large amount of back pay sought. It grants a more reasonable amount.

As an initial step in determining the appropriate amount of back pay to award, the Court looks to Mr. Robinson's overtime hours in the years preceding the District's discrimination. *See Caudle*, 825 F. Supp. 2d at 76–78 (evaluating the plaintiffs' pre-discrimination hours to approximate the hours they would have worked without discrimination). Mr. Robinson worked 1,062 overtime hours in 2010, but only 459 hours in 2011, 57 hours in 2012, and 121 hours in 2013. Pay Mot. Ex. 2, ECF No. 70-2. Based on these figures, Mr. Robinson's approximately 526 overtime hours during the discrimination period in 2014 and 2015 are in line with his overtime hours in the absence of discrimination. *See* Pay Mot. at 3; Pay Mot. Ex. 2 & Ex. 4.

However, Mr. Robinson argues that:

> From 2011–2013, [he] worked less overtime hours for three reasons. First, [he] and his wife deemed it important to have a parent home with their youngest daughter during her most impressionable and vulnerable years (ages 10–12) so that she would not attempt to accompany her older teenage siblings who had more freedom

> . . . Second, [he] was not able to work many overtime hours in the SEB during his first two years (2012–2013) because he did not have the skillset necessary to qualify for most of the SEB overtime work . . . Third, Lisa Sutter was excluding [him] from ATEU overtime without a legitimate non-discriminatory reason.

Pay Mot. at 2 n.2; Affidavit of Mark Robinson ("Robinson Affidavit II") ¶ 12, Pay Mot. Ex. 1, ECF No. 70-1. Mr. Robinson also argues that he would have worked more OT hours in 2014 and 2015 than in the preceding years because:

> [first] he needed to recover financially from the prior three years during which he was completely excluded from working overtime in the ATEU, which contributed to his decision to file bankruptcy in 2013[,] his children were older and required less supervision, thereby freeing [Mr. Robinson] to work more hours; and [third,] civilianization of the unit was leading to a termination of ATEU overtime opportunities so [Mr. Robinson] would have worked as much as possible while it lasted.

Pay Mot. at 8; Robinson Affidavit II ¶¶ 6, 10.

Accordingly, Mr. Robinson asserts that rather than determining back pay based on his overtime hours in the absence of discrimination, the Court should look to "the amount of ATEU overtime that was worked by similarly motivated persons" during the period of discrimination. *Id*. at 16. Because Mr. Robinson "worked more than 1[,]000 hours in 2010 before Lisa Sutter began excluding him from overtime opportunities," he claims that the "similarly motivated persons" are other MPD officers who worked at least 1,000 hours in 2014 in the ATEU Overtime Program.[5] *Id*. The Court accepts this baseline comparison.[6] *See Ball v. USPS*, 53 F. App'x 910,

---

[5] As the District notes, Mr. Robinson's 1,000 ATEU overtime hours in 2010 were not all earned through the ATEU Overtime Program. Pay Opp'n at 5–6. However, the District does not dispute that Mr. Robinson accumulated 1,000 ATEU overtime hours in that year. *Id*. Because Mr. Robinson's back pay is based on ATEU overtime hours he would have accumulated through the ATEU Overtime Program in 2014 and 2015, and because during this period there were no MPD officers detailed to the ATEU full time—the position Mr. Robinson occupied in 2010—the Court agrees with Mr. Robinson that MPD officers who accumulated 1,000 ATEU overtime hours through the ATEU Overtime Program during this period provide a helpful comparison.

[6] Mr. Robinson contends that "the Court *must* either accept [Mr. Robinson's] Affidavit testimony" regarding his opportunity and motivation to work ATEU overtime hours in 2014 and

911 (Fed. Cir. 2002) ("[T]he overtime component of a back pay award may be calculated 'based either upon an employee's prior overtime experience or . . . upon the overtime experience of similarly situated employees' during the back pay period." (quoting *Naekel v. Dep't of Transp.,* 850 F.2d 682, 684 (Fed. Cir. 1988))); *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995) (evaluating the plaintiff's argument that his back pay award should reflect the salary of the individual occupying the position he would have occupied, but for discrimination); *Clarke v. Frank*, 960 F.2d 1146, 1150–51 (2d Cir. 1992) (affirming the district court's decision to award the plaintiff back pay "representing the amount earned by a similarly situated [employee] during the back pay period").

To discredit Mr. Robinson's methodology, the District argues that Mr. Robinson could have worked additional SEB overtime hours in 2014 and 2015 but failed to do so. [7] In making this argument, without explicitly stating so, the District appears to claim that Mr. Robinson failed to mitigate his damages incurred from the District's discrimination. [8] "Title VII requires

---

2015 "or conduct an evidentiary hearing." Pl.'s Reply Defs. Opp'n ("Pay Reply") at 3 n.3, ECF No. 77. The Court accepts Mr. Robinson's assertion that he was motivated to work a significant amount of ATEU overtime in 2014 and 2015 if given the opportunity, and that the SEB did not provide the same overtime opportunities as the ATEU. The Court accordingly denies Mr. Robinson's request for an evidentiary hearing regarding his credibility.

[7] The District also seems to suggest that Mr. Robinson's back pay calculation is overly speculative because he failed to utilize expert analysis. *See* Pay Opp'n at 1–2 (citing *Caudle*, 825 F. Supp. 2d at 76–77). While expert testimony may aid a court in fashioning a back pay award, particularly in a case, such as *Caudle*, involving multiple plaintiffs and complex back pay calculations, the District has cited no case in this jurisdiction, and this Court is not aware of one, holding that expert testimony is necessary to support a claim for back pay. "[C]alculating lost pay in a case like this necessarily involves some amount of estimation," and Mr. Robinson and the Court may "rely on certain basic assumptions" in undertaking that estimation. *Caudle*, 825 F. Supp. 2d at 77–78. As explained below, while the Court does not blindly accept Mr. Robinson's back pay calculation, it concludes that Mr. Robinson's methodology and the assumptions underlying that methodology are sufficiently reasonable to guide the Court's determination.

[8] Oddly enough, the District also argues that Mr. Robinson "fully mitigated his alleged lost overtime wages" because he worked more SEB overtime hours in 2014 and 2015 than the

plaintiffs to mitigate damages." *Pittington*, 880 F.3d at 799 (citing *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983)); *see also* 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). While "the plaintiff bears the initial burden of establish[ing] a prima facie case and present[ing] evidence on the issue of damages, the defendant bears the subsequent burden of establish[ing] the amount of interim earnings or lack of diligence." *Pittington*, 880 F.3d at 880 (internal quotation marks omitted) (quoting *Rasimas*, 714 F.2d at 623)).

The District notes that at trial Mr. Robinson's current SEB supervisor, Captain Robert Glover, "described in detail the many overtime opportunities available" to SEB members. Pay Opp'n at 7. Captain Glover also stated that "all three [SEB] shifts" would have allowed an officer to maximize his or her overtime opportunities. Transcript of Trial at 16:8–15 (Mar. 14, 2018), Pay Opp'n Ex. 3, ECF No. 75-3. However, the District has not provided record evidence in support of that claim, and the SEB overtime opportunities raised by Captain Glover during the trial appeared to be primarily daytime opportunities, such as sports events, parades, protests, and official government detail assignments. *See* Transcript of Trial at 11:8–16; 14:2–15:10 (Mar. 14, 2018). And Mr. Robinson worked the SEB day shift, when most of these opportunities would have been available. *Id.* 15:13–16:4; Pay Reply at 4–5. Based on the current sparse record, the Court is thus skeptical that Mr. Robinson was necessarily able to take advantage of these

---

average number of overtime hours earned by officers in the ATEU Overtime Program during this period. Pay Opp'n at 10. However, as discussed above, the Court accepts Mr. Robinson's argument that only officers who worked at least 1,000 ATEU overtime hours were similarly situated to Mr. Robinson, because prior to the relevant time period Mr. Robinson worked over 1,000 hours of overtime in the ATEU unit. Pay Mot. Ex. 2 at 16–21. The Court therefore uses those officers' average overtime hours, rather than the average of all officers in the ATEU Overtime Program, to evaluate Mr. Robinson's entitlement to back pay.

additional SEB overtime opportunities, even if they were as plentiful as Captain Glover suggested.[9]

The District further notes that seventeen SEB officers earned more non-ATEU overtime hours than Mr. Robinson during the discrimination period. Pay Opp'n at 7, Pay Opp'n Ex. 4, ECF No. 75-4. However, the District has not indicated whether the SEB officers who earned more overtime than Mr. Robinson worked the same shifts as him. *See id.* Aside from its references to Captain Glover's trial testimony and a list of the overtime hours worked by all SEB officers during the discrimination period, the District "surprisingly offer[s] *no* affirmative evidence regarding mitigation," and thus "the Court has no basis to reduce the [back pay] award" to the District's requested $0 to $750. *Lewis v. District of Columbia*, 315 F. Supp. 3d 571, 582–83 (D.D.C. 2018).[10]

However, while the Court accepts Mr. Robinson's contention that he would have supplemented his SEB overtime with ATEU overtime in 2014 and 2015 had he not been discriminated against, it need not accept Mr. Robinson's calculation of the *amount* of additional overtime he would have worked. Mr. Robinson notes that MPD officers with at least 1,000 hours of ATEU overtime during the discrimination period worked an average of approximately 1,354 overtime hours. Pay Mot. at 8. He claims "in good faith that he would have worked no

---

[9] The District also notes that "from 2005 to 2010 [Mr. Robinson] infrequently worked the[] designated ATEU OT Program shifts"; 6:00am to 2:00pm, 2:00pm to 10:00pm, and 10:00pm to 6:00am. Pay Opp'n at 5. However, the record indicates that during the discrimination period in 2014 and 2015, many of Mr. Robinson's SEB overtime shifts began at 2:00pm. Pay Mot. Ex. 2 at 25–30. The District has thus failed to show that Mr. Robinson could not regularly work at least one of the ATEU Overtime Program shifts; the 2:00pm to 10:00pm shift.

[10] Because the Court declines to accept Captain Glover's testimony on this issue, it need not consider Mr. Robinson's argument, based on the Law of the Case Doctrine, that the District is foreclosed from arguing that Mr. Robinson failed to take full advantage of SEB overtime opportunities. Pay Mot. at 18–20.

less than 1,354 hours of ATEU overtime during the [discrimination period] in addition to the

[526] hours of overtime he worked in the SEB." *Id*. at 9; Robinson Affidavit II ¶ 10. In other

words, Mr. Robinson claims that he would have worked approximately 1,880 overtime hours

over the sixteen-month discrimination period. The Court finds this number to be overly

speculative for two reasons.

First, Mr. Robinson has not supplied sufficient data for the Court to conduct a direct

comparison of his overtime hours to the overtime hours of similarly situated individuals. He

provides the number of ATEU overtime hours worked by those similarly situated individuals, but

he does not provide those individuals' *total* overtime hours. It may be true that, as Mr. Robinson

asserts, those individuals accrued their ATEU overtime hours "in addition to overtime hours they

worked in their respective units," (emphasis omitted), but Mr. Robinson supplies no evidence to

support that statement. Pay Mot. at 6. Accordingly, the Court is left with no choice but to

assume that the individuals similarly situated to Mr. Robinson during the discrimination period

worked an average of 1,354 *total* overtime hours.

Second, Mr. Robinson has not sufficiently demonstrated that he could reasonably have

accumulated 1,880 overtime hours. He claims that, if given the opportunity, he would work two

back-to-back ATEU overtime shifts on his days off from the SEB, Pay Mot. at 5, but the District

presents evidence indicating that Mr. Robinson worked back-to-back shifts on a day off very

infrequently between 2010 and 2015. *See* Pay Opp'n at 7; Pay Mot. Ex. 2. Mr. Robinson also

identifies six officers "working in a branch of the Special Operations Division"—the division in

which the SEB is housed–who accumulated more than 1,000 ATEU overtime hours, including

four who accumulated more than 1,500 hours, but he has not demonstrated that those officers

worked similar shifts in their respective divisions to his shifts in the SEB, which would suggest

that he could have taken advantage of the same ATEU overtime opportunities.[11] *See* Pay Mot. at 7; *id*. Ex. 5.  Accordingly, Mr. Robinson has failed to show that it was feasible for him to work the same amount of overtime as those officers.[12]  Mr. Robinson claims that he would work nearly *eleven extra work days per month* over sixteen months, but he has not provided the evidence necessary to justify that ambitious claim.

*          *          *

In summary, the Court concludes that in the absence of discrimination Mr. Robinson would have worked additional ATEU overtime hours, but not as many as he claims. Accordingly, the Court must determine a sufficient back pay award to "recreate the conditions . . . that would have been [for Mr. Robinson], had there been no unlawful discrimination." *Berger*, 170 F.3d at 1119.  As noted, the Court credits Mr. Robinson's assertion that he was similarly situated to individuals who worked at least 1,000 ATEU overtime hours in 2014.  Because the record evidence indicates that these individuals worked an average of 1,354 overtime hours, Pay Mot. at 8; Pay Mot. Ex. 1 ¶ 10; Pay Mot. Ex. 5, the Court will assume that Mr. Robinson would have worked 1,354 overtime hours during the period at issue, in the absence of discrimination. Subtracting from this total Mr. Robinson's 526 SEB overtime hours during this period, *id*. Ex. 2 & Ex. 4, the Court concludes that Mr. Robinson would have worked 828 ATEU overtime hours

---

[11] Moreover, the District's unrebutted record evidence suggests that only two of those six individuals were actually employed in the Special Operations Division.  Pay Opp'n Ex. 2, ECF No. 75-2.

[12] The Court urged Mr. Robinson to provide a comparison of his SEB shift schedule to the schedules of similarly situated officers who accumulated ATEU overtime hours during the discrimination period.  Because Mr. Robinson failed to provide this comparison, the Court has no basis to accept his argument that he was similarly situated to these four specific individuals.

at his applicable overtime rates during the period at issue in 2014 and 2015.[13] Mr. Robinson is entitled to back pay for those ATEU overtime hours.[14]

Mr. Robinson is also entitled to pre-judgment interest on his back pay award. "The back pay provision of Title VII 'is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination,' and '[p]rejudgment interest, of course, is an element of complete compensation.'" *Berger*, 170 F.3d at 1139 (quoting *Loeffler v. Frank,* 486 U.S. 549, 558 (1988)). Accordingly, "prejudgment interest 'must be an ordinary part of any award of back pay.'" *Barbour,* 48 F.3d at 1278 (quoting *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1297 (7th Cir.1987)). The decision of how to compute prejudgment interest is within this Court's discretion. *Berger*, 170 F.3d at 1139 (citing *Forman v. Korean Air Lines Co.,* 84 F.3d 446, 450 (D.C. Cir. 1996)).

---

[13] Applying Mr. Robinson's wage rates during the sixteen months at issue during 2014 and 2015, *see id.* Ex. 2–4, to his projected ATEU overtime hours, the Court estimates that Mr. Robinson is entitled to a back pay award of $63,340.45, calculated as follows:

- February 2014 through May 2014: $71.85 hourly overtime rate for 207 ATEU overtime hours yields $14,872.95.

- June 2014 through September 2014: $74.71 hourly overtime rate for 207 ATEU overtime hours yields $15,464.97.

- October 2014 through April 2015: $79.71 hourly overtime rate for 362.25 ATEU overtime hours yields $28,874.95.

- May 2015: $79.76 hourly overtime rate for 51.75 ATEU overtime hours yields $4,127.58.

The parties should conduct their own calculations to verify the Court's estimation.

[14] The District may deduct employer tax withholdings from this back pay award. *See Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213, (2d Cir. 2012) (concluding "that both back pay and front pay are 'wages' as defined by the Internal Revenue Code" and subject to employer withholdings); *Coleman v. Potomac Elec. Pwr. Co.*, 281 F. Supp. 2d 250, 255 (D.D.C. 2003) (acknowledging an employer's right to apply tax withholdings when paying back pay).

Mr. Robinson seeks pre-judgment interest at a rate of 4%, compounded monthly, based on *Jean-Baptise*, a recent ruling in a similar Title VII case by another court in this jurisdiction. Pay Mot. at 18. In that case, the court noted that "[t]here is some authority to suggest that interest on Title VII back pay awards against the District of Columbia is capped at four percent per year." *Id.*, 958 F. Supp. 2d at 48 (citing *King v. Palmer,* 641 F. Supp. 186, 188 (D.D.C. 1986) (stating that interest on back pay is authorized by Title VII but that "the rate of interest on a Title VII judgment against the District of Columbia or its officials is fixed at 4 percent by D.C. Code § 28–3302")). Because in that case, as in this case, the jury verdict did not distinguish between liability based on violations of Title VII and liability based on violations of the DCHRA, the court assumed that D.C. Code § 28–3302 limited the prejudgment interest to be imposed under either statute. *Id.* at 47–48. In accordance with this reasoning, and because the District does not challenge Mr. Robinson's request for four percent interest, the District must pay Mr. Robinson prejudgment interest at the rate of four percent, compounded annually, to the date of today's judgment. *Id.*[15]

### C. Attorneys' Fees

Third, and finally, the Court addresses Mr. Robinson's motion for attorneys' fees and costs under 42 U.S.C. § 2000e-5(k). As noted, Mr. Robinson must establish that he is the prevailing party, and if he succeeds in establishing this element he must further establish (1) a reasonable hourly rate for his attorneys' services; (2) the number of hours reasonably expended

---

[15] Mr. Robinson asserts that prejudgment interest should be compounded monthly, rather than annually, because if he invested his ATEU overtime wages in the stock market that investment would have increased annually with the Dow Jones Industrial Average at far more than four percent since 2014. Pay Mot. at 18. However, Mr. Robinson cites no case law in support of this argument, and this Court declines to deviate from the practice of other courts in this jurisdiction in awarding prejudgment interest compounded annually. *See Berger*, 170 F.3d at 1139–40; *Jean-Baptiste*, 958 F. Supp. 2d at 48.

by those attorneys on the litigation; and (3) whether a fee enhancement is appropriate. *See Covington*, 57 F.3d at 1107. The parties agree that Mr. Robinson is a prevailing party, and, as explained below, they agree in part on the hourly rate that should govern the Court's fee determination. *See* Fee Mot. at 1–2; Def.'s Opp'n Pl.'s Fee Mot. ("Fee Opp'n") at 4, ECF No. 69. They do not agree, however, on the reasonableness of the fees that Mr. Robinson seeks.

Mr. Robinson seeks fees in the amount of $340,418.66 for legal services through June 8, 2018; $290,874.00 for the services of Kenneth McPherson, $49,544.00 for the services of Leonard Pazulski, and $1,057.04 in costs. Fee Mot. at 2. The District contends that (1) Mr. Robinson's proposed fees are "disproportionate and unreasonable" considering the damages awarded by the jury; (2) Mr. Robinson's attorneys engaged in improper block billing; and (3) Mr. Robinson's attorneys charged an unreasonable rate for their fee motion. Fee Opp'n at 4. The District contends that these factors warrant a sixty percent reduction in Mr. Robinson's attorneys' fee award. *Id.* For the reasons explained below, the Court agrees that Mr. Robinson's proposed fees are unreasonably high—though not as unreasonable as the District asserts—and it reduces the fees accordingly.

### 1. Reasonable Hourly Rate

Both parties agree that the Fee Matrix published by the United States Attorney's Office for the District of Columbia (the "USAO Matrix") should determine the reasonable hourly rate governing Mr. Robinson's attorneys' fees. *See* Fee Mot. at 2; Fee Opp'n at 4. Courts in this district customarily apply the USAO Matrix in determining the reasonable hourly rate for attorneys' fees in complex federal litigation. *See Craig*, 197 F. Supp. 3d at 276–77; *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds en banc by Save Our*

*Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988). Indeed, courts in this district have been reluctant to depart from the USAO Matrix "absent a strong showing that such a departure is justified by the nature and complexity of the litigation." *Am. Lands All. v. Norton*, 525 F. Supp. 2d 135, 150 (D.D.C. 2007).

In this Circuit, Title VII cases are sufficiently complex to merit USAO Matrix rates. *See Hansson v. Norton,* 411 F.3d 231, 236 (D.C. Cir. 2005) (acknowledging that a reasonable hourly rate is guided by the USAO matrix in Title VII actions); *Craig*, 197 F. Supp. 3d at 276–77 (awarding fees based on the USAO Matrix in a Title VII action); *Does I, II, III*, 448 F. Supp. 2d at 139–41 (same). According to the USAO Matrix, the hourly rate for attorneys such as Mr. McPherson and Mr. Pazulski, with twenty-one to thirty years of experience, was $530 to $563 from 2015 to 2018. *See* USAO Fee Matrix—2015–2019;[16] Affidavit of Kenneth E. McPherson ("McPherson Affidavit") ¶¶ 8–10, Fee Mot. Ex. 1, ECF No. 63-1; Affidavit of Leonard H. Pazulski ("Pazulski Affidavit") ¶ 6, Fee Mot. Ex. 4, ECF No. 63-1; Affidavit of Terrell N. Roberts ("Roberts Affidavit") ¶¶ 15–16, Fee Mot. Ex. 6, ECF No. 63-1. The District does not contest Mr. Robinson's rate calculation. Therefore, the Court will award attorneys' fees at Mr. Robinson's requested rate of $563 per hour, the 2017–2018 USAO Matrix rate for attorneys with twenty-one to thirty years of experience.[17]

---

[16] Available at https://www.justice.gov/usao-dc/file/796471/download. The Court may take judicial notice of the hourly rates provided in the USAO Matrix because the rates "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Conn. Stone Indus., LLC*, 318 F. Supp. 3d 328, 335 n.4 (D.D.C. 2018) (taking judicial notice of the USAO Matrix).

[17] Typically, courts award fees at an hourly rate based on the year in which the work was completed. *See, e.g.*, *Reed v. District of Columbia*, 134 F. Supp. 3d 122, 136–37 (D.D.C.2015), *rev'd on other grounds*, 843 F.3d 517 (D.C. Cir. 2016). But here, Mr. Robinson seeks an award at the rate of $563—the hourly USAO Matrix rate for 2017–2018—for all of his counsels' legal work stretching back to 2014. Fee Mot. at 20. To account for a delay in payment of attorneys'

## 2. Hours Reasonably Expended

Having determined that Mr. Robinson's attorneys seek a reasonable hourly rate, the Court turns to the reasonableness of Mr. Robinson's request for fees covering 516.6 hours of Mr. McPherson's time and 88 hours of Mr. Pazulski's time, Fee Mot. Ex. 9, totaling $340,418.66. Fee Mot. at 20. As noted, the District argues that the Court should reduce Mr. Robinson's requested fees because (1) the fees amount is unreasonable considering the limited success of Mr. Robinson's claims; (2) Mr. Robinson's counsel failed to show "proper billing judgment" by engaging in block billing; and (3) Mr. Robinson's counsel seek an unreasonably high rate for their work drafting the fee motion. Fee Opp'n at 4. Addressing each argument in turn, the Court concludes that certain downward adjustments are warranted.

### a. Reduction in Fees for Unsuccessful Claims

First, the Court addresses the District's argument that Mr. Robinson's attorneys' fees should be reduced by fifty percent because he achieved only limited success on the merits of his claims. Fee Opp'n at 5. The Court may make such an adjustment, if warranted. *See Hensley*, 461 U.S. at 434–36 (explaining that when plaintiffs prevail on only some of their claims, "a fee award based on the [total] claimed hours" would be "excessive"); *Merrick v. District of Columbia*, No. 17-2133, 2018 WL 3419165, at *3 (D.D.C. July 13, 2018) (same); *Craig*, 197 F.

---

fees, courts have awarded pre-judgment interest (in addition to fees at the respective yearly hourly rate) or fees at the current hourly rate, at least in some contexts. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) ("An adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee[.]"); *Craig*, 197 F. Supp. 3d at 277 n.6 (applying the current hourly rate to past attorney work to compensate for a delay in payment in a Title VII case). Here, because the District has not responded to Mr. Robinson's position, the Court will award fees at the current USAO Matrix rate for all past work. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) (holding that compensation for a delay in payment "is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value" (internal quotation marks and citation omitted)).

Supp. 3d at 283 ("When reducing fees for limited degree of success, the Court may reduce fees in a number of ways, such as by eliminating specific hours or reducing the award as a whole.").

When determining how to reduce a fee award for a partially successful plaintiff, a court must analyze the relationships between the successful and unsuccessful claims. *See Hensley*, 461 U.S. at 434–35. If the plaintiff presented "distinctly different claims for relief that are based on different facts and legal theories," the plaintiff's "counsel's work on one claim will be unrelated to his work on another claim." *Id.* In cases with such "distinctly different claims," "no fee may be awarded for services on [any] unsuccessful claim[s]." *Id.* But if the plaintiff's claims "involve a common core of facts," or are based on "related legal theories," "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. In cases with interrelated claims, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The District makes two arguments for why Mr. Robinson's fee award should be reduced for lack of success. First, the District argues that Mr. Robinson failed to succeed on his 42 U.S.C. § 1981(a) claims, his discrimination and retaliation claims arising from his assignment from the ATEU to the SEB, and his retaliation claim arising from his exclusion from ATEU overtime opportunities, and therefore that Mr. Robinson should not be awarded fees for work on those claims. Fee Opp'n at 6–7. Second, the District argues that the overall relief obtained by Mr. Robinson at trial—$750—does not justify a fee award of nearly $350,000. *Id.* at 5. Mr. Robinson contends that all of his claims arose from the same core set of facts and his degree of success cannot be measured only by his relief at trial, considering the amount of back pay he seeks. Pl.'s Reply Fee Opp'n ("Fee Reply") at 2, 7, ECF No. 76. The Court concludes that Mr.

Robinson's claims were sufficiently interrelated that his counsels' work on the reassignment claims cannot be isolated and removed from their work on the ATEU overtime opportunity claims. However, the Court also concludes that a slight downward fee adjustment is appropriate considering Mr. Robinson's overall success.

### i. Claim-by-Claim Reduction

The District claims that Mr. Robinson's fee award should be reduced because while Mr. Robinson initially alleged that he was discriminated and retaliated against in both his reassignment from the ATEU to the SEB and his foreclosure from ATEU overtime opportunities, Mr. Robinson only succeeded in proving that he was discriminated against with respect to ATEU overtime opportunities. Fee Opp'n at 7. However, after a review of the record, the Court concludes that Mr. Robinson's claims arose from a "common core of facts," *Hensley*, 461 U.S. at 435, and hence, that the Court cannot easily divide, claim-by-claim, the hours expended on successful claims and the hours expended on unsuccessful claims.

Each of Mr. Robinson's claims arose from his work in the ATEU program and the opportunity—or lack thereof—for him to continue that work. *See generally* Compl. Each claim required an evaluation of Mr. Robinson's history with the ATEU and his ability to secure ATEU work during the alleged periods of retaliation and discrimination. *See id.* The relevant facts for each claim were interrelated with the relevant facts for the other claims, particularly because the claims were based on the same legal theories; retaliation and discrimination under Title VII and the DCHRA.[18]

---

[18] As noted, Mr. Robinson brought two claims under 42 U.S.C. § 1981(a), arising from the same set of facts, that were dismissed shortly after the action was commenced because § 1981(a) does not provide an independent cause of action. *Robinson I*, 139 F. Supp. 3d at 450–51. Mr. Robinson notes that he conceded these claims at the motion to dismiss stage, and he contends that his attorneys "did not spend any time on [these claims] except when [Mr.

The cases the District cites in support of its claim-by-claim fee reduction argument are unpersuasive. *David v. District of Columbia* involved two plaintiffs who brought four common law tort claims and a 42 U.S.C. § 1983 claim—the only claim eligible for attorneys' fees under 42 U.S.C. § 1988—against three defendants, including a private hospital that could not be held liable under § 1983. 489 F. Supp. 2d 45, 47 (D.D.C. 2007). The Magistrate Judge assigned to the case held that because only one of the five counts—the § 1983 count—was eligible for attorneys' fees, and because the plaintiffs only received nominal damages for that count, an eighty percent reduction was warranted. *Id*. at 51. All of the claims in Mr. Robinson's action, however, are eligible for attorneys' fees and are brought on behalf of one plaintiff against the same defendant. And in the other case cited by the District, *Mazloum v. District of Columbia*, another court in this jurisdiction declined to reduce the plaintiff's requested attorneys' fees on a claim-by-claim basis because "[a]ll claims share[d] a common basis in fact—they all stem[med] from the [same] incident" at a nightclub. *Id*., 654 F. Supp. 2d 1, 3 (D.D.C. 2009). Rather, the court reduced the plaintiff's requested fees because the plaintiff "was wholly unsuccessful on his primary discrimination claim." *Id*. at 4. Accordingly, as in *Mazloum*, because Mr. Robinson's claims were based on interrelated facts, the Court will not reduce his counsels' hours expended on a claim-by-claim basis. *See Hensley*, 461 U.S. at 434–37.

---

McPherson] drafted the complaint." *See* Fee Reply at 1–2. The Court accepts Mr. Robinson's argument, particularly because the District does not argue to the contrary and because the billing entries attached to Mr. Robinson's fee motion do not indicate that his attorneys expended any time on the § 1981(a) claims beyond the complaint. *See* Fee Mot. Ex. 8 & Ex. 9. The Court therefore declines to reduce Mr. Robinson's fee award because of the failure of his § 1981(a) claims.

### ii. Overall Reduction

While Mr. Robinson ultimately prevailed in his lawsuit, the District notes the large disparity between the relief Mr. Robinson received at trial and the attorneys' fees he seeks, arguing that "where the jury awarded [Mr. Robinson] less than $1,000, a fee award of nearly $350,000 is excessive." Fee Opp'n at 5.[19] However, the District fails to account for Mr. Robinson's back pay award of approximately $70,000, described in detail above. With the addition of this award, Mr. Robinson seeks fees that are roughly five times as great as the amount awarded; a large multiple but not nearly the 450 times asserted by the District. *See* Fee Opp'n at 6.

Simply because an attorneys' fee award is greater than the damages and injunctive relief awarded to the plaintiff does not automatically make that fee award excessive. *See Thomas v. Nat'l Football League Players Ass'n,* 273 F.3d 1124, 1129 (D.C. Cir. 2001) ("That the fees awarded are . . . nearly five times the amount of plaintiff's recovery, does not make them excessive." (citation and internal quotation marks omitted)). "There is, of course, no mathematical rule requiring proportionality between compensatory damages and attorneys' fees

---

[19] The District cites several cases in which courts in this jurisdiction held that a fee reduction may be appropriate when the fees sought are grossly excessive compared to the plaintiff's award. *Id.* (citing *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 960 (D.C. Cir. 2017); *Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 745 (D.C. Cir. 2000); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 280 (D.D.C. 2009); *Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1, 4-5 (D.D.C. 2005)). While these cases are factually distinguishable, *Baylor*, 857 F.3d at 955 (describing the attorney's unreasonable, potentially unethical billing conduct); *Muldrow*, 397 F. Supp. 2d at 4 (noting that the plaintiff's 1983 action was "in essence a relatively straightforward negligence suit" in which "there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues"), or address statutes other than Title VII, *Williams*, 225 F.3d at 746–47 (evaluating the plaintiff's fee request under the District of Columbia Consumer Protection and Procedures Act); *In re InPhonic*, 674 F. Supp. 2d at 282–83 (same), they stand for the basic proposition that a court may reduce a plaintiff's fee award if it is disproportionate to the plaintiff's success in the case. *Hensley*, 461 U.S. at 434–36.

awards, and courts have awarded attorneys' fees where plaintiffs recovered only nominal or minimal damages." *Thompson v. Int'l Ass'n of Machinists & Aerospace Workers,* 664 F. Supp. 578, 581 (D.D.C. 1987) (citations omitted). As acknowledged by another court in this jurisdiction, "the use of the lodestar approach will, at times, necessitate fee awards that exceed the aggregate recovery to their clients." *Driscoll v. George Washington Univ.*, 55 F. Supp. 3d 106, 113–14 (D.D.C. 2014). But "[t]his is no reason to reduce fee awards given the policy objectives of fee-shifting statutes." *Radtke v. Caschetta*, 254 F. Supp. 3d 163, 172 (D.D.C. 2017).

Applying these principles, the Court declines to reduce Mr. Robinson's fee award simply because it is five times greater than his damages and back pay awards. The Supreme Court and this Circuit have affirmed fee awards at similar proportions. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (affirming a fee award that was more than seven times the plaintiffs' recovery) (plurality opinion); *Thomas*, 273 F.3d at 1129 (affirming a fee award that was approximately five times the plaintiff's recovery); *Williams*, 225 F.3d at 746–47 (affirming a fee award that was approximately eight times the plaintiff's recovery). Moreover, as Mr. Robinson notes, his counsel successfully parried, in part, multiple rounds of dispositive motions filed by the District, along with several pretrial objections. Fee Reply at 12–13. The time spent by Mr. Robinson's counsel engaging in pretrial maneuvering does not strike the Court as unreasonable, given the "unfortunate stuff of modern, knock-down, drag-out litigation." *Thomas*, 273 F.3d at 1129 n.8.

That said, Mr. Robinson's counsel were not able to secure the full measure of relief sought. As the District notes, Mr. Robinson's complaint sought $1,600,000 in non-economic damages, while his counsel obtained $750 at trial. Fee Opp'n at 5; *see also* Compl. ¶¶ 21, 25,

31, 34. Mr. Robinson, with no record support, attributes this apparent failure to a strategic trial decision, arguing that "the bigger the push for non-economic damages, the less likely the jury could be persuaded to find liability in favor of the Plaintiff if the jury was asked to find race was the *sole* motive for excluding [Mr. Robinson] from overtime opportunities." Fee Reply at 7–8. This post-hac rationalization does not convince the Court to overlook Mr. Robinson's apparent lack of success with respect to non-economic damages. Moreover, Mr. Robinson sought approximately $121,000 in back pay, Pay Mot. at 12, but as explained above, the Court is awarding approximately sixty percent of that request. Additionally, the District prevailed in part at the motion to dismiss and motion for summary judgment stages. *See Robinson I*, 139 F. Supp. 3d at 451; *Robinson II*, 275 F. Supp. 3d at 104–05. In light of this history, the Court concludes that a modest reduction of fifteen percent is warranted to reflect "the significance of the overall relief obtained by [Mr. Robinson] in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also Craig*, 197 F. Supp. 3d at 284 (reducing the plaintiff's fee award by thirty percent where certain of the plaintiff's claims were dismissed at the motion to dismiss and summary judgment stages).

### b. Billing Judgment

Second, the District argues that the fees should be reduced by ten percent because Mr. Robinson's attorneys showed poor billing judgment. Fee Opp'n at 9–10. To support a reasonable fee request, a plaintiff's "supporting documentation must be of sufficient detail and probative value to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (internal quotation marks and alterations omitted) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per curiam)). Satisfactory documentation consists of

"contemporaneous time records of hours worked . . . plus a detailed description of the subject matter of the work with supporting documents, if any." *Ashraf–Hassan*, 189 F. Supp. 3d at 58 (quoting *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam)).

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. A fixed, percentage reduction may be warranted when a large number of billing entries suffer from one or more deficiencies. *Role Models Am., Inc.*, 353 F.3d at 973. Moreover, where, as here, "[a] pleading-by-pleading examination of the copious files in [a] case would be unnecessarily burdensome," a court has discretion to "simply reduc[e] the proposed lodestar fee by a reasonable amount without performing an item-by-item accounting." *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980) (internal quotation marks omitted).

The District argues that Mr. Robinson's supporting documentation is insufficient to enable the Court to determine whether Mr. Robinson's attorneys reasonably expended time on the case, because the attorneys engaged in improper block billing. Fee Opp'n at 8–10. Block billing involves lumping multiple legal tasks together in a single time entry submitted to the court. And as the District notes, Fee Opp'n at 8, this Circuit has held that a fee reduction is appropriate when an attorney's "time records lump together multiple tasks, making it impossible to evaluate their reasonableness." *Role Models*, 353 F.3d at 971 (quoting *In re Olsen*, 884 F.2d at 1428–29). However, "the fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 F.2d 1319, 1327 (D.C. Cir. 1982) (quoting *Copeland*, 641 F.2d at 891).

Mr. Robinson has attached dozens of pages of records to his fee motion, containing hundreds of billing entries. *See* Fee Mot. Ex. 8 & Ex. 9. The District has identified twelve entries as a sample of improper entries, among them entries that the Court does not find problematic.[20] Moreover, the entries that do push the boundaries of reasonableness do not rise to the level of deficient block billing described in *Role Models*, in which this Circuit encountered entries that included entirely unrelated tasks, some of which were performed on matters unrelated to the case itself. *Role Models,* 353 F.3d at 971. Moreover, the fifty percent fee reduction imposed in *Role Models* reflected additional serious impediments to the Circuit's determination of the reasonableness of the time billed, including boilerplate, repetitive, one-line entries, references to individuals whose role in the case was unexplained, duplication of work, and time billed for tasks that did not warrant reimbursement. *Id*. at 971–73. While not always the model of clarity, Mr. Robinson's billing entries are sufficiently descriptive to allow the Court to evaluate the overall reasonableness of the hours billed by Mr. Robinson's attorneys.[21] *See Fitts v. Unum Life Ins. Co. of America*, 680 F. Supp. 2d 38, 42 n.4 (D.D.C. 2010) (declining to penalize the plaintiff for entries that "appear[ed] to list more than one task but are more

---

[20] Several entries in the list include more than one action but are sufficiently detailed for the Court to understand that the actions relate to the same core task. For example, the District includes one entry stating that the relevant attorney spent 5.3 hours "[r]ead[ing] Defs' Motion to Dismiss; pull[ing] cases cited by Defs and read[ing] same; begin[ing] outline of arguments in opposition." Fee Mot. at 8; Fee Mot. Ex. 8 at 3. Another entry states that the relevant attorney spent 4.1 hours to "[c]omplete, revise, edit, research, and finish Opposition to Mtn to Dismiss. Assemble exhibits and efile Opposition." Fee Mot. at 9; Fee Mot. Ex. 8 at 4. These entries contain "sufficient detail and probative value" to allow the Court to determine that the hours listed were reasonably expended in furtherance of the case. *Role Models*, 353 F.3d at 970.

[21] The District references "other defects" in Mr. Robinson's billing entries warranting a fee reduction, but it does not provide any examples of those defects. Fee Opp'n at 9. In the Court's own review, it did not encounter any defects that were severe enough to prevent it from evaluating the reasonableness of the entries. Accordingly, the Court will not reduce the award on this basis.

appropriately read as providing detailed explanations of how a single task was accomplished");
*DL v. District of Columbia,* 256 F.R.D. 239, 245, 245 n.12 (D.D.C. 2009) (declining to reduce fees even where "plaintiffs' initial billing records . . . do show some minor instances of block billing" because these instances were "not a serious problem" and "do not appear nearly as egregious as those that have been chastised previously by this Court"); *Smith v. District of Columbia,* 466 F. Supp. 2d 151, 157–58 (D.D.C. 2006) (rejecting a request to reduce fees because of block billing, even though plaintiff's "fee petitions do contain a certain amount of block billing," because the fees were not blatantly unreasonable as in *Role Models* and the block billing was not so extensive as to call into question the overall reasonableness of the request). Accordingly, the Court declines to reduce Mr. Robinson's fee award for poor billing judgment.

### c. *"Fees on Fees"*

Third, and finally, the District argues that the fees should be reduced because Mr. Robinson's attorneys charged an unreasonably high billing rate for their preparation of the fee motion. Fee Opp'n at 10. It "is settled in this circuit" that "[h]ours reasonably devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985) (citing *Sierra Club v. EPA*, 769 F.2d 796, 811 (D.C. Cir. 1985)). "However, 'fees on fees' must be reasonable, and not excessive." *Gatore v. DHS*, 286 F. Supp. 3d 25, 49 (D.D.C. 2017) (quoting *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008)). "Courts, therefore, 'have an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys.'" *Boehner*, 541 F. Supp. 2d at 325 (quoting *Heard v. District of Columbia,* No. 02-0296, 2006 WL 2568013, at *19 (D.D.C. Sept. 5, 2006)).

Mr. Robinson's attorneys seek approximately $21,000 for forty hours spent preparing the motion. *See* Fee Opp'n at 10; Fee Mot. Ex. 8. The District does not oppose the hours spent on the motion, but it opposes the application of the USAO Matrix billing rate—$563 per hour—to those hours. *See* Fee Opp'n at 10. The District argues that "fee petitions are inherently less complicated than the underlying litigation," and therefore that the USAO Matrix governing complex federal litigation is inapplicable to fee disputes. Fee Opp'n at 10. The Court does not agree.

While a Title VII fee dispute may be less complex than the underlying Title VII merits litigation, it is reasonable for counsel handling both phases of the litigation to apply a consistent billing rate throughout the proceedings. *See Reed v. District of Columbia*, 843 F.3d 517, 526–27 (D.C. Cir. 2016) (affirming the District Court's application of the same billing rate to the plaintiffs' administrative IDEA proceeding and their fee litigation); *James v. District of Columbia*, 302 F. Supp. 3d 213, 228 (D.D.C. 2018) ("There is no evidence in the record to support any meaningful difference in the market rate for substantive work as opposed to fees-on-fees."). In accordance with this principle, Courts in this jurisdiction have applied the USAO Matrix in calculating fees on fees for Title VII actions and other complex litigation. *See Tridico v. District of Columbia*, 235 F. Supp. 3d 100, 108 (D.D.C. 2017); *Gatore*, 286 F. Supp. 3d at 49–51 (applying the USAO Matrix to determine the plaintiff's fees on fees award in a Freedom of Information Act matter). Following these cases, the Court concludes that the USAO Matrix is applicable to the fees on fees sought by Mr. Robinson.

The District is correct that other courts in this jurisdiction have held that the USAO Matrix does not apply to fee litigation, but those decisions primarily concern Individuals with Disabilities Education Act ("IDEA") litigation, which is structurally different from Title VII

litigation.  The IDEA provides a variety of mechanisms for disabled students to receive the

assistance they require.  This assistance includes an "impartial due process hearing . . . conducted

by the State educational agency or by the local educational agency" after a party has filed a

complaint, 20 U.S.C. § 1415(f)(1)(A), pertaining to "any matter relating to the identification,

evaluation, or educational placement of [a] child, or the provision of a free appropriate public

education to such child," *id*. § 1415(b)(6)(A).  Parents or legal guardians who prevail in such

proceedings may sue the government in federal district court to request the award of "reasonable

attorney's fees" and related costs.  *Id*. § 1415(i)(3)(B)(i).  Courts—including in the cases cited by

the District—have held that IDEA fee litigation, when the underlying IDEA dispute was raised

in an administrative proceeding, is not complex federal litigation warranting the USAO Matrix's

application.  *See F.S. v. District of Columbia*, 307 F.R.D. 28, 29–30 (D.D.C. 2014); *Means v.

District of Columbia*, 999 F. Supp. 2d 128, 136 (D.D.C. 2013); *Gavin v. Gov't of D.C.*, 910 F.

Supp. 2d 135, 140 (D.D.C. 2012) ("[T]he litigation for which the plaintiffs seek an award of

attorneys' fees does not concern complex issues regarding the application of the IDEA, but is

rather fairly straightforward litigation over an award of attorneys' fees under the IDEA's fee-

shifting provision."); *Wright v. District of Columbia*, 883 F. Supp. 2d 132, 135 (D.D.C. 2012).

Here, however, Mr. Robinson's Title VII action did not involve the IDEA's two-step process; his

Title VII merits were litigated in this Court from complaint through trial, and the same counsel

handled the merits phase and the current post-trial relief phase.

Moreover, when courts in this jurisdiction have reduced fees on fees awards in Title VII

cases and other complex litigation, they have typically taken issue with the overall amount of

fees requested, rather than the billing rate applied.  *See Craig*, 197 F. Supp. 3d at 282 ("[A]n

award of over $80,000 for the preparation of this routine fee petition would be excessive");

*Heard v. District of Columbia*, No. 02-0296, 2006 WL 2568013, at *20–21 (D.D.C. Sept. 5, 2006) (halving the plaintiff's fees on fees request where the "[p]laintiff's counsel was overzealous in their preparation of the Fee Petition"). As noted, the District does not argue that the forty hours spent by Mr. Robinson's counsel on his fee motion were unreasonable. And other courts in this jurisdiction have awarded fees on fees in complex litigation for a comparable number of hours. *See McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 162–63 (D.D.C. 2017) (granting the plaintiffs' fees on fees request for fifty hours). Accordingly, the Court holds that Mr. Robinson's fees on fees request is reasonable, and it awards the full amount requested.

### 3. Costs

Mr. Robinson also requests reimbursement for $1,057.04 in costs associated with the litigation of his claims. Fee Mot. at 2; Fee Mot. Ex. 1 & Ex. 7, ECF No. 63-1. "An award of costs for copying, faxing and postage . . . [is] customarily included in fees awards." *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004); *see also Sexcius v. District of Columbia*, 839 F. Supp. 919, 927 (D.D.C. 1993) (noting that "[r]easonable photocopying, postage, long distance telephone, messenger, and transportation and parking costs are customarily considered part of a reasonable 'attorney's fee'"); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891–92 (D.D.C. 1993). Such costs are only shifted to the defendant if they are reasonable. *See Bailey*, 839 F. Supp. at 892. And, importantly, the costs recoverable as part of an attorneys' fee award consist only of "related *nontaxable* expenses." Fed. R. Civ. P. 54(d)(2)(A) (emphasis added).

While Mr. Robinson primarily requests reimbursement for nontaxable expenses—such as parking costs and supplies—he also appears to request reimbursement for taxable expenses. Fee Mot. Ex. 7. Under 28 U.S.C, § 1920 and Local Rule 54.1(d), "Clerk's fees," deposition

transcripts, and witness fees are taxable by the Clerk upon receipt of a bill of costs submitted on a court-approved form. LCvR 54.1(a), 54.1(d). Mr. Robinson seeks reimbursement for a filing fee ($120), a witness fee ($45), and a fee for "depos of 30b6" ($769.42); $934.42 in total. Fee Mot. Ex. 7. Without further explanation from Mr. Robinson, the Court concludes that these are taxable fees that must be submitted in a bill of costs,[22] and that cannot be reimbursed through Mr. Robinson's fee motion. The Court accordingly deducts these fees from Mr. Robinson's request, leaving him with $122.62 in unopposed costs. The District must reimburse these costs.[23]

*        *        *

As explained above, the Court deducts fifteen percent from Mr. Robinson's initial attorneys' fees request of $340,418.66 because while Mr. Robinson's attorneys were highly effective, they failed to achieve "excellent results" justifying the full amount of fees requested. *Hensley*, 461 U.S. at 435. This reduces the award to $289,355.86, plus $122.62 in costs. Accordingly, Mr. Robinson's final attorneys' fee award is $289,478.48.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

1. Mr. Robinson's Motion for Injunctive Relief (ECF No. 64) is **GRANTED IN PART** as follows:

---

[22] Of course, upon proper submission of the bill of costs, the Clerk will award such routine costs as a matter of course. Fed. R. Civ. P. 54(d)(1).

[23] Mr. McPherson acknowledges that he lacks receipts for these costs because he "ha[s] not been able to locate [his] file containing the receipts." McPherson Affidavit ¶ 21. The Court accepts this explanation, particularly because the District does not oppose it and because the request for reimbursement is very low compared to the total fee award.

a. The District is enjoined from excluding Mr. Robinson, because of his race, from overtime opportunities in the ATEU Overtime Program, to the extent the Program is still operational and such opportunities are available to officers outside the ATEU unit.

2. Mr. Robinson's Motion for Award of Back Pay (ECF No. 70) is **GRANTED IN PART**.

3. Mr. Robinson's Motion for Attorneys' Fees and Costs (ECF No. 63) is **GRANTED IN PART**.

It is **FURTHER ORDERED** that Mr. Robinson is entitled to back pay for 828 ATEU overtime hours at his applicable overtime rates during the period at issue in 2014 and 2015, less employer tax withholdings, plus prejudgment interest to be calculated by the parties at the rate of four percent, compounded annually to the date of today's judgment. It is **FURTHER ORDERED** that Mr. Robinson is awarded **$289,478.48** in attorneys' fees. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: October 23, 2018                                   RUDOLPH CONTRERAS
                                                          United States District Judge