# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MARK E. ROBINSON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-444 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 81, 85, 86 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

**DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW;
DENYING DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT;
GRANTING IN PART PLAINTIFF'S SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES**

## I. INTRODUCTION

After a three day trial, a jury found that Defendant the District of Columbia discriminated against Plaintiff Mark Robinson on the basis of race when it deprived him of certain overtime opportunities within the District's Metropolitan Police Department ("MPD"). This discrimination violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a). The jury awarded Mr. Robinson $750 in compensatory damages. After a round of post-trial briefing, this Court awarded Mr. Robinson injunctive relief, back pay, and attorneys' fees.

The District has filed two post-judgment motions. First, the District moves for judgment as a matter of law, arguing that no reasonable jury could conclude that Mr. Robinson suffered an adverse employment action required for Title VII liability. Second, the District moves to alter the Court's order granting Mr. Robinson injunctive relief, back pay, and attorneys' fees, arguing that the relief is "manifestly unjust" in light of the governing law and the evidence presented in this case. The Court concludes that the jury could reasonably find that Mr. Robinson suffered an adverse employment action. The Court also concludes that its post-trial relief is supported by the

record and is necessary to fulfill Title VII's mandate. The Court thus denies the District's

motions, and grants Mr. Robinson additional attorneys' fees.

## II. BACKGROUND

The Court's prior memorandum opinions in this case contain detailed background

summaries. *See Robinson v. District of Columbia*, 341 F. Supp. 3d 97, 103–05 (D.D.C. 2018);

*Robinson v. District of Columbia*, 275 F. Supp. 3d 95, 99–101 (D.D.C. 2017). The Court will

briefly recount the relevant background here. Mr. Robinson is a sworn MPD officer. *See* Trial

Tr. 77:23–78:1, Mar. 12, 2018, ECF No. 83 (test. of Mark Robinson). He spent several years in

MPD's Automated Traffic Enforcement Unit ("ATEU"), a division created to organize traffic

camera photographs, analyze evidence of traffic violations, and issue tickets. *See id.* 50:10–22

(test. of Sharion Garner), 81:3–12 (test. of Mark Robinson). Assignment to the ATEU was

apparently lucrative; Mr. Robinson earned significant overtime pay while in the division. *See id.*

102:4–19 (test. of Mark Robinson).

In late 2011, Mr. Robinson was transferred from the ATEU to MPD's Special Events

Branch ("SEB"), ostensibly because MPD was "civilianizing" the ATEU.[1] *See* Trial Tr. 8:2–13

(Mar. 13, 2018) (test. of Mark Robinson). At this point, although Mr. Robinson was no longer

working full time in the ATEU, he could still earn overtime hours through the ATEU Overtime

Program. *See id.* 89:13–91:7 (test. of Lisa Sutter). Between February 2014 and May 2015, Mr.

Robinson attempted to participate in the Program. *See id.* 15:17–16:7 (test. of Mark Robinson).

The Program manager, Lisa Sutter, denied his requests. *See id.* 38:12–25.

---

[1] Civilianization is a process in which sworn police officers are replaced with civilian
staff who have limited or zero police powers, and who provide administrative or specialist
support to police functions.

Believing these denials to be discriminatory, and receiving no recourse through administrative channels, Mr. Robinson brought this case in 2015. *See generally* Compl., ECF No. 1-3, at 5. He alleged that the District violated Title VII when it transferred him out of the ATEU, denied his request for reassignment to the ATEU, and denied him access to the ATEU Overtime Program between February 2014 and May 2015, all because of his race or in retaliation for complaining about racial discrimination. *See generally id.* After several rounds of briefing, the case proceeded to trial on Mr. Robinson's claim that he was blocked from the ATEU Overtime Program because of discrimination or retaliation. *See Robinson*, 275 F. Supp. 3d at 104–05. The Court dismissed Mr. Robinson's retaliation claim at the end of his case, leaving only Mr. Robinson's discrimination claim. *See* Fed. R. Civ. P. 50(a)(2); Min. Entry (Mar. 13, 2018). On that claim, the jury found that the District discriminated against Mr. Robinson by denying him ATEU overtime opportunities, and it awarded him $750 in damages. *See* Verdict Form, ECF No. 56.

The jury's verdict has precipitated contentious post-trial litigation. First, Mr. Robinson filed motions for back pay, injunctive relief, and attorneys' fees, which the Court granted in part. *See Robinson*, 341 F. Supp. 3d at 124. Now, the District has struck back. It has filed motions for judgment as a matter of law, and to alter or amend the post-trial relief. Mr. Robinson opposes these motions and seeks additional attorneys' fees. All three motions are ripe for the Court's consideration. It will address them in order.

### III.  MOTION FOR JUDGMENT AS A MATTER OF LAW

First, the Court considers the District's motion, under Federal Rule of Civil Procedure 50(b)(3), for judgment as a matter of law. *See* Def.'s Mot. J. Matter of Law, ECF No. 85. Mr. Robinson contests this motion on the merits, but also raises a procedural challenge. A brief

summary of Rule 50 procedure is thus in order. Rule 50(a) allows a party in a jury trial to move for judgment as a matter of law after "a party has been fully heard on an issue" and "before the case is submitted to the jury." Fed. R. Civ. P. 50(a). If the Court finds that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party on that issue, then the Court may grant the motion for judgment as a matter of law on any "claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." *Id.* If the Court does not grant the motion, however, the Court "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).

After the jury renders its verdict, Rule 50(b) allows the moving party, "[n]o later than 28 days after the entry of judgment," to renew its motion for judgment as a matter of law. *Id.* "Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." Fed. R. Civ. P. 50 Advisory Committee Note to 2006 Amendment; *accord Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.").

In ruling on a Rule 50(b) motion, the Court "do[es] not . . . lightly disturb a jury verdict." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015) (ellipsis in original) (quoting *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007)); *see also Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43, 53 (D.C. Cir. 2011) ("[J]udgment as a matter of law is 'highly disfavored' because it 'intrudes upon the rightful province of the jury'" (quoting *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994))). The Court must resolve all reasonable inferences in the nonmovant's favor. *See Breeden*, 646 F.3d at 53. The Court cannot substitute

its view for the jury's view, assess witnesses' credibility, or weigh the evidence. *See Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996). And "[e]ven if the Court finds the evidence that led to the jury verdict unpersuasive, or that it would have reached a different result if it were sitting as the fact-finder, that is not a basis for overturning the jury's verdict and granting judgment as a matter of law." *Pitt v. District of Columbia*, 558 F. Supp. 2d 11, 15–16 (D.D.C. 2008) (citing 9 Moore's Federal Practice § 50.60[1] at 50–87 (3d ed. 2002)). The jury's verdict will stand if the evidence in support is "'significantly probative' and 'more than merely colorable.'" *Scott*, 101 F.3d at 753 (quoting *Ferguson v. F.R. Winkler GMBH & Co. KG*, 79 F.3d 1221, 1224 (D.C. Cir. 1996)). In other words, "[j]udgment as a matter of law is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Muldrow*, 493 F.3d at 165 (quoting *McGill v. Muñoz*, 203 F.3d 843, 845 (D.C. Cir. 2000)).

Here, the jury found that the District discriminated against Mr. Robinson by denying him the opportunity to participate in the ATEU Overtime Program. Under Title VII, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-16(a)). The District does not challenge the jury's finding on the second element; that Mr. Robinson was deprived of access to the ATEU Overtime Program because of his race. Rather, the District focuses on the first element. It argues that no reasonable jury could have found that Mr. Robinson suffered an adverse employment action. *See* Def.'s Mem. Supp. Mot. J. Matter of Law ("Def.'s Rule 50 Mem.") at 1, ECF No. 85.

"An adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Jones v. Castro*, 168 F. Supp. 3d 169, 174 (D.D.C. 2016) (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)). "For employment actions that do not obviously result in a significant change in employment status . . . an employee must go the further step of demonstrating how the decision nonetheless caused . . . an objectively tangible harm." *Id.* (quoting *Douglas*, 559 F.3d at 553). In such a case, the court must determine "whether the alleged harm is unduly speculative." *Douglas*, 559 F.3d at 553. "Showing that harm is not speculative need not be a difficult task, and it often is not." *Id.*

The denial of overtime opportunities is the type of employment action that typically requires a showing of objectively tangible harm. This is because while overtime comes with "a tangible monetary advantage," it "is not universally regarded as desirable." *Bell v. Gonzales*, 398 F. Supp. 2d 78, 97 (D.D.C. 2005). Thus, a lost opportunity for overtime is considered an adverse action only when it is "associated with a fundamental alteration in the conditions of employment, such as a transfer or reassignment of duties that has a significant adverse impact on overtime opportunities, and the plaintiff demonstrates that '[he] in the past sought opportunities for overtime pay or it was otherwise known to defendant that [he] desired such opportunities.'" *Caul v. U.S. Capitol Police*, No. 15-1243, 2016 WL 2962194, at *9 (D.D.C. May 19, 2016) (quoting *Sims v. District of Columbia*, 33 F. Supp. 3d 1, 7 (D.D.C. 2014)); *see also Bell*, 398 F. Supp. 2d at 97. "The duration and frequency of the denial of overtime opportunities are both significant factors in evaluating the adversity presented by such a discrimination claim." *Id.*

The District concedes that "it is undisputed that [Mr. Robinson] sought overtime opportunities in the ATEU Overtime Program and that the District knew [he] desired these

opportunities." Def.'s Rule 50 Mem. at 9. It puts forth two reasons, however, why a reasonable jury still could not find that Mr. Robinson suffered an adverse employment action. First, the District contends that Mr. Robinson "failed at trial to present any evidence about how many hours he earned in the ATEU Overtime Program before his exclusion in February 2014." Def.'s Rule 50 Mem. at 9. Second, the District contends that Mr. Robinson "did not establish that he was unable to earn the same amount of overtime hours in the SEB" as he would have through the ATEU, absent discrimination. *Id.* Without this evidence, according to the District, a reasonable juror could not have concluded that Mr. Robinson "suffered an objectively tangible harm" necessary for Title VII liability. *Id.*

As an initial matter, Mr. Robinson argues that the District's motion is "procedurally barred" because it raises arguments not raised in the District's Rule 50(a) trial motions. Pl.'s Opp'n Def.'s Mot. J. Matter of Law ("Rule 50 Opp'n") at 2, ECF No. 91. It is true that "Rule 50(b) permits only the 'renewing' of arguments made in prior Rule 50(a) motions." *Campbell v. District of Columbia*, 894 F.3d 281, 286 (D.C. Cir. 2018) (citing Fed. R. Riv. P. 50(b); *Exxon Shipping*, 554 U.S. at 485 n.5). But the District complied with that rule here. The trial record, which Mr. Robinson admits he did not have when drafting his brief, *see* Rule 50 Opp'n at 4 n.3, bears this out. After Mr. Robinson's case-in-chief, the District argued that Mr. Robinson "failed to prove an adverse employment action" because (1) he put forth minimal evidence "about what overtime that was actually certified operator overtime"—i.e. ATEU Overtime Program hours— "that he worked" before the discrimination period; and (2) "he actually testified that he was never denied overtime shifts in the [SEB]." Trial Tr. 72:22–73:11, Mar. 13, 2018. After the parties rested their cases, the District argued that Mr. Robinson failed to "show an adverse action" because the District's evidence "establishe[d] that he had opportunities to work overtime

in the [SEB] that could have been equal to what he claims to have worked when he was in the ATEU." Trial Tr. 39:6–14, Mar. 14, 2018. Thus, both at trial and in its current motion, the District argued that Mr. Robinson failed to show, more than speculatively, that he was deprived of overtime hours he would have earned but for the District's discrimination. While the District may not have phrased its arguments identically at trial and in its current motion, the District satisfied Rule 50's function, "which is to provide notice of legal arguments and prevent counsel from sandbagging an opposing party by waiting until after entry of the judgment to raise a new argument that requires new evidence to be rebutted." *Campbell*, 894 F.3d at 287 (citing *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004)). The District's Rule 50(b) arguments were properly preserved.

Having overcome that procedural challenge, the Court turns to the merits. The District's two core arguments raise one core question: Could a reasonable jury conclude, based on the evidence presented, that the District caused a "significant adverse impact" on Mr. Robinson's overtime opportunities? The answer is yes.

At trial, Mr. Robinson described the plentiful overtime opportunities available to him through the ATEU Overtime Program. He testified, and the District did not contradict, that ATEU Overtime Program shifts were readily available twenty-four hours a day, six days a week. *See* Trial Tr. 23:9–14, Mar. 13, 2018 (test. of Mark Robinson). Participating officers could plan their own overtime schedules in advance, *see id.* 27:16–23, or sign up electronically for "standby" shifts, without the need for supervisor approval, *see id.* 29:24–30:11. Each shift lasted for eight hours. *See id.* 47:4–15.

Overtime in the SEB, on the other hand, came "in spurts," "not 24 hours a day," and it was "not offered 6 days a week." *Id.* at 21:10–20. It was also a combination of mandatory and

8

voluntary overtime, depending on event timing and staffing decisions.  *See* Trial Tr. 19:5–20,

Mar. 14, 2019 (test. of Robert Glover).  And SEB overtime shifts appear to have lasted for less

than eight hours.  *See id.* at 13:24–14:1 (stating than an SEB officer could earn "six to seven

hours of overtime for each presidential movement").  Mr. Robinson testified that within those

constraints, he earned SEB overtime "as much as [he] could;" he "worked the overtime that was

available."  Trial Tr. 25:17–25, Mar. 13, 2019 (test. of Mark Robinson).

 Yet, according to Mr. Robinson, he would have earned hours in the ATEU Overtime

Program "above and beyond" what he earned through the SEB.  *Id.* at 26:9–12.  He explained

that this was because the ATEU Overtime Program simply provided more overtime opportunities

and more flexibility.  *See id.* at 27:2–23.  And this was borne out by the record: Mr. Robinson

earned over 1,000 ATEU overtime hours in 2010, *see* Pl.'s Mot. Back Pay Ex. 2 at 21, ECF No.

70-2, and only 525.75 SEB overtime hours during the fifteen-month discrimination period, *see*

Def.'s Rule 50 Mem. Ex. 3, ECF No. 85-3.[2]  Given this evidence, a reasonable jury could

---

[2] The District makes hay of Mr. Robinson's testimony that he worked "some shifts" in the ATEU Overtime Program in 2010.  *See* Def.'s Rule 50 Mem. at 10; Trial Tr. 46:2–4 (Mar. 13, 2018) (test. of Mark Robinson).  It argues that this statement, and certain other evidence, shows that many of Mr. Robinson's 1,000 overtime hours in 2010 were not earned in the ATEU Overtime Program, but rather in other ATEU components.  *See* Def.'s Rule 50 Mem. at 9–10.  But as explained below, the District's showing on this point was perhaps not as strong as it believes.  And more fundamentally, as the District itself concedes, "[o]vertime wages are fungible."  *Id.* at 11.  Thus "'a lost opportunity for overtime,' is an adverse employment action, but a lost opportunity for a specific type of overtime assignment is not."  *Id.* (quoting *Bell*, 398 F. Supp. 2d at 97).  The evidence showed that in 2010, when Mr. Robinson had flexible access to apparently ubiquitous ATEU overtime opportunities, he embraced those opportunities.  It is not particularly damning, then, that Mr. Robinson worked only "some" ATEU Overtime shifts when he had access to other plentiful overtime opportunities.  After Mr. Robinson was reassigned to the SEB, however, the ATEU Overtime Program was the only avenue for him to secure the same flexible, ubiquitous opportunities.  The jury found that the District discriminatorily denied Mr. Robinson access to those opportunities through the Program, an "objectively tangible harm."

conclude that Mr. Robinson's exclusion from the ATEU Overtime Program materially reduced his overtime opportunities, and thus his compensation.

The District suggests that to show objectively tangible harm, Mr. Robinson was required to precisely quantify the number of hours he earned in the ATEU Overtime Program before the discrimination period, and compare it to the hours he earned when he could not access the Program. *See* Def.'s Rule 50 Mem. at 10. True, Mr. Robinson needed to show that the District deprived him of a non-trivial amount of overtime that he would have actually earned. *See Anyaso v. U.S. Capitol Police*, 39 F. Supp. 3d 34, 41 n.2 (D.D.C. 2014) (holding that "[t]he mere conclusory assertion that [the plaintiff] *might* have had additional opportunities for overtime," but for the defendant's action, was not sufficient to show an adverse employment action); *Sims*, 33 F. Supp. 3d at 8 (rejecting an overtime-based discrimination claim where the evidence showed only that the plaintiff "may have lost the opportunity to earn overtime pay while participating in . . . two short-term detail assignments," but was otherwise not denied overtime opportunities); *Caul*, 2016 WL 2962194, at *13 ("A onetime denial of overtime request in the context of the plaintiff's admissions that his requests for overtime were regularly approved, does not cause a *significant* change in benefits." (emphasis in original) (citations and internal quotation marks omitted)). His allegations could not be "unduly speculative." *Douglas*, 559 F.3d at 553.

But the law does not require the absolute precision advocated by the District. Rather, Mr. Robinson needed only to convince the jury that he would have consistently earned hours in the ATEU Overtime Program, that the District prevented him from doing so, and that the SEB provided significantly inferior overtime opportunities. *See Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007) (holding that the plaintiff could have suffered an adverse employment

action if she "lost the potential to earn many hours of overtime."); *Bell*, 398 F. Supp. 2d at 97–98 (allowing the plaintiff's overtime-based retaliation claim to survive summary judgment where he presented evidence "showing that substantially more overtime pay was available . . . on average" to employees in the unit from which he had been reassigned); *Caul*, 2016 WL 2962194, at *9 (holding that a plaintiff may suffer an adverse employment action when he was denied overtime in a "frequent and recurring" manner). Mr. Robinson's evidence was sufficiently probative that a reasonable jury could have reached that conclusion.[3]

The District also argues that Mr. Robinson failed to prove that he had fewer opportunities to earn overtime in the SEB than he would have had through the ATEU Overtime Program. The District notes that Mr. Robinson's SEB supervisor, Captain Robert Glover, testified that "[i]t would have been fairly easy [for an SEB officer] to accomplish 20 [overtime] hours in a week." Trial Tr. 18:5–17, Mar. 14, 2018 (test. of Robert Glover). Captain Glover also described the types of sporadic overtime opportunities available to SEB members. *See id.* at 15:1–16:11 (listing parades, sporting events, movie sets, and protests as possible SEB overtime opportunities). But this testimony is no more precise than Mr. Robinson's testimony to the

---

[3] The District complains that Mr. Robinson did not present particularly strong evidence that he would have actually worked the additional overtime hours available to him through the ATEU Overtime Program, had he been granted access to it. But the District had an opportunity to rebut that evidence at trial. It could have countered Mr. Robinson by, for instance, introducing time records showing that Mr. Robinson turned down opportunities in the ATEU Overtime Program when he did have access to it. *See Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 436 (7th Cir. 2009) (holding that whether the plaintiff proved an adverse employment action was a question for the jury, which the defendant answered in the negative by presenting evidence that the plaintiff "did not know how much overtime she would have earned, [and] that there were several other equally beneficial details available to her"). The District admits, however, that it merely succeeded in showing that Mr. Robinson "potentially earned" 742 hours in the Program in 2010, maybe slightly fewer. *See* Def.'s Rule 50 Mem. at 10. But approximately 700 overtime hours in one year is still significantly more than the 530 overtime hours Mr. Robinson earned in the SEB in fifteen months. *See* Def.'s Rule 50 Mem. Ex. 3. Given the District's weak showing, it was not unreasonable for the jury to side with Mr. Robinson.

contrary. Captain Glover did not identify any specific opportunities that Mr. Robinson turned

down; his testimony was not even specific to Mr. Robinson's SEB shift schedule. *See id.* at

17:6–16 (stating that "all three shifts have [overtime] opportunities"). In other words, Mr.

Robinson testified rather vaguely that his overtime opportunities were constrained in the SEB,

and Captain Glover testified rather vaguely that they were not. The jury weighed both

testimonies and sided with Mr. Robinson. Captain Glover's testimony was not so detailed or

persuasive that this conclusion was unreasonable.[4]

The District also fails to appreciate that Mr. Robinson's argument turned not just on the

volume of hours available in the ATEU Overtime Program, but also on the flexible nature of

those hours. Eight-hour overtime shifts were available twenty-four hours a day, six days a week.

Mr. Robinson could avail himself of these shifts when it was convenient for him. SEB overtime

opportunities, on the other hand, appear to have been sporadic, subject to sports seasons, the

irregular political and convention schedules, and staffing decisions made by Mr. Robinson's

supervisors. Thus, even if the jury credited Captain Glover's testimony, Mr. Robinson's

opportunity to earn twenty SEB overtime hours in a week during inconvenient times was not the

same as an opportunity to earn twenty ATEU overtime hours when it was most convenient for

---

[4] Along the same lines, the District notes that Mr. Robinson admitted that there was never "an instance when he requested overtime in the SEB and was denied." Def.'s Rule 50 Mem. at 12 (citing Trial Tr. 43:25–44:4, Mar. 13, 2018 (test. of Mark Robinson). But Mr. Robinson also testified that he maximized his SEB overtime hours. *See* Trial Tr. 44:5–8, Mar. 13, 2018 (test. of Mark Robinson). And Captain Glover testified that Mr. Robinson earned overtime as the lead car for presidential motorcades "quite often," "one to two times a week." Trial Tr. 12:18–13:10, Mar. 12, 2018 (test. of Robert Glover). The jury apparently found this latter testimony credible, despite the former testimony. *See Bell*, 398 F. Supp. 2d at 98 (holding that a jury could find an overtime-based adverse employment action even though the "plaintiff ha[d] not pointed to specific instances in which overtime was requested and denied"). The Court will not overrule that finding.

him.  Title VII prevents access to that lucrative and convenient opportunity from being denied on the basis of race.

Finally, the District notes that seventeen SEB officers earned more overtime during the discrimination period than Mr. Robinson.  *See* Def.'s Rule 50 Mem. Ex. 3.  But the District did not show that these officers had similar shift schedules to Mr. Robinson, such that Mr. Robinson would have had the same overtime opportunities.  It was thus not unreasonable for the jury to discount that evidence.

Mr. Robinson could have presented a stronger case.  But his case was not as bare-bones as the District argues.[5]  And the District's evidence to the contrary was not particularly strong either.  The Court simply cannot conclude that "the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in [Mr. Robinson's] favor." *Muldrow*, 493 F.3d at 165 (quoting *McGill*, 203 F.3d at 845).  The Court thus denies the District's motion for judgment as a matter of law.

## IV.  MOTION TO ALTER JUDGMENT

Next, the Court considers the District's motion, under Federal Rule of Civil Procedure 59(e), to alter or amend the Court's order granting Mr. Robinson injunctive relief, back pay, and attorneys' fees.  *See* Def.'s Rule 59(e) Mot. Alter or Amend J., ECF No. 86; *see also Robinson*, 341 F. Supp. 3d at 124.  "Rule 59(e) provides a limited exception to the rule that judgments are

---

[5] The District takes issue with Mr. Robinson's "vague, self-serving testimony."  Def.'s Rule 50 Mem. at 12.  But it is "beyond question as a general proposition that parties, like other fact witnesses, are legally competent to give material testimony." *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016) ("To the extent the testimony of a witness who is also a party may be impaired by party self-interest, it is ordinarily the role of the jury—not the court on summary judgment—to discount it accordingly."); *see also Bell*, 398 F. Supp. 2d at 97 (allowing the plaintiff's adverse employment action argument to proceed based on his "declaration and deposition testimony").  The District had the opportunity to rebut that testimony, and it failed to do so.

to remain final." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (citing

*Derrington-Bey v. D.C. Dep't of Corr.*, 39 F.3d 1224, 1225 (D.C. Cir. 1994)). This Court may

grant a Rule 59(e) motion under three circumstances: "(1) if there is an 'intervening change of

controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be

amended in order to 'correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Firestone

v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)). "Although the [C]ourt has

considerable discretion in ruling on a Rule 59(e) motion, the reconsideration or amendment of a

judgment is nonetheless an extraordinary measure." *Id.* (citing *Firestone*, 76 F.3d at 1208). This

extraordinary measure is "aimed at reconsideration, not initial consideration." *Id.* (quoting

*District of Columbia v. Doe*, 611 F.3d 888, 896 (D.C. Cir. 2010)). Thus, Rule 59(e) "may not be

used to relitigate old matters, or to raise arguments or present evidence that could have been

raised prior to the entry of judgment." *Exxon Shipping*, 554 U.S. at 485 n.5 (quoting 11 C.

Wright & A. Miller, Federal Practice & Procedure § 2810.1 (2d ed. 1995)).

The District argues that the Court must alter or amend its order to prevent a "manifest

injustice." Def.'s Mem. Supp. Rule 59 Mot. ("Def.'s Rule 59 Mem.") at 3, ECF No. 86. In

determining whether its order is manifestly unjust, this Court must "examine whether [the

decision] would 'upset settled expectations—expectations on which a party may reasonably

place reliance.'" *Leidos*, 881 F.3d at 217 (quoting *Qwest Servs. Corp. v. FCC*, 509 F.3d 531,

540 (D.C. Cir. 2007)). Put another way, "manifest injustice" requires "at least (1) a clear and

certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law."

*Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), *aff'd*, 782 F.3d 9

(D.C. Cir. 2015).

The District faces an uphill battle in challenging the Court's "considerable discretion" to award relief in Title VII cases. *Lander v. Lujan*, 888 F.2d 153, 156 (D.C. Cir. 1989); *see also Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995). "[O]ne of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)). In line with this purpose, Title VII expressly provides for a variety of remedies:

> If the court finds that the [defendant] has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may enjoin the [defendant] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). In considering what remedy is appropriate, a court "must strive to grant 'the most complete relief possible.'" *Lander*, 888 F.2d at 156 (quoting *Franks,* 424 U.S. at 764).

The District argues that the Court overstepped its discretion in awarding injunctive relief and back pay to Mr. Robinson. *See* Def.'s Rule 59 Mem. at 3. The Court shall address these challenges in order. It concludes that, given its broad discretion to award relief and the District's high burden to show manifest injustice, the Court's order should remain in place.[6]

### A. Injunctive Relief

The District contends that the Court's injunction—preventing it from "excluding Mr. Robinson, because of his race, from overtime opportunities in the ATEU Overtime Program, to

---

[6] The District also asks the Court to reduce Mr. Robinson's attorneys' fee award, if the Court vacates Mr. Robinson's injunctive relief or reduces his back pay award. *See id.* at 12–13. Because the Court does not alter its judgment, it does not alter Mr. Robinson's attorneys' fee award.

the extent the Program is still operational and such opportunities are available to officers outside the ATEU Unit"—was manifestly unjust. Def.'s Rule 59 Mem. at 4; *see also* Order (Oct. 23, 2018), ECF No. 78. This relief was manifestly unjust, according to the District, because the ATEU Overtime Program "ended around May 2015." Def.'s Rule 59 Mem. at 4. Mr. Robinson thus "cannot show a realistic threat of future exclusion from the ATEU Overtime Program," the District asserts, which is necessary to justify injunctive relief. *Id.*

The Court's narrowly tailored injunction is necessary to restore Mr. Robinson, as nearly as possible, to the circumstances he "would have occupied if the wrong had not been committed." *Lander*, 888 F.2d at 156 (quoting *Albemarle Paper Co.*, 422 U.S. at 419). The jury found that Mr. Robinson was discriminatorily denied access to the ATEU Overtime Program. Title VII dictates that he not be discriminatorily denied access to that Program in the future. The Court thus enjoined the District from doing so. The injunction does not *require* the District to place Mr. Robinson in the Program, nor does it prevent the District from denying Mr. Robinson access for non-discriminatory reasons, for instance because Mr. Robinson cannot meet the Program's requirements or because the Program is not currently providing overtime opportunities. The injunction is narrowly tailored to the specific plaintiff in this case—Mr. Robinson—and the specific injury found by the jury.

The District's renewed evidentiary argument does not persuade the Court to alter its injunction. It is true that Lisa Sutter testified that the ATEU Overtime Program "concluded" on May 16, 2015, an assertion that Mr. Robinson has not contradicted. Aff. of Elisabeth Sutter ¶ 6, ECF No. 19-3; *see also* Trial Tr. 109:19–25, Mar. 13, 2018 (test. of Lisa Sutter). But as Mr. Robinson notes, the MPD General Order establishing the ATEU Overtime Program does not appear to have been rescinded. *See* GO-303.10 (Oct. 1, 2010), https://go.mpdconline.com

/GO/GO_303_10.pdf. Because the Program is, apparently, still in existence, Mr. Robinson cannot be "made whole" without an assurance that he will have nondiscriminatory access to the Program, to the same extent as all other officers. *See Barbour*, 48 F.3d at 1278. And while Ms. Sutter—the individual primarily responsible for depriving Mr. Robinson of ATEU Overtime Program opportunities—is no longer employed by the MPD, the District points to no case law indicating that a court cannot grant injunctive relief if the primary violator has been removed from the relevant program, but the program continues. *See Jean-Baptiste v. District of Columbia*, 958 F. Supp. 2d 37, 51 (D.D.C. 2013) (enjoining the District from discriminating against the plaintiff in the future, even though the "'alleged' harasser" and other individuals involved in the discrimination at issue were no longer employed by the relevant agency). The District points to evidence indicating that Mr. Robinson is perhaps not as likely to be discriminated against in the future as plaintiffs in other Title VII cases in this jurisdiction. *See, e.g., Caudle v. District of Columbia*, 825 F. Supp. 2d 73, 81 (D.D.C. 2011) (enjoining the District from retaliating against the plaintiffs when "both the plaintiffs and the parties responsible for the unlawful action they experienced continue[d] to work for the defendant"). That evidence is not so overwhelming, however, that limited injunctive relief would be manifestly unjust.[7]

More generally, the District has failed to meet Rule 59(e)'s standard with respect to this issue. The District does not discuss how the Court's narrowly tailored order—to obey the law with respect to a single officer's placement in a specific program—imposes a "clear and certain

---

[7] The Court did not wholly ignore the District's argument. It declined to enjoin the District from discriminating and retaliating against Mr. Robinson more generally, because Mr. Robinson failed to show that further discrimination or retaliation was more than remotely possible outside of the ATEU Overtime Program. *See Robinson*, 341 F. Supp. 3d at 107–09.

prejudice" on the District. *Mohammadi*, 947 F. Supp. 2d at 78; *see also Jean-Baptiste*, 958 F. Supp. 2d at 51 ("A permanent injunction barring discrimination against [a] plaintiff imposes little burden on the District."). Nor does the District describe how the Court's order "upset settled expectations." *Leidos*, 881 F.3d at 217.

And the District has not shown that the Court's order was "fundamentally unfair in light of governing law." *Mohammadi*, 947 F. Supp. 2d at 78. The authorities cited in the District's opening brief concern plaintiffs' standing to challenge allegedly illegal government policies and practices, on non-Title VII grounds. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 98, 105–13 (1983) (considering a challenge to a police department's alleged policy or practice of applying chokeholds during arrests); *Haase v. Sessions*, 835 F.2d 902, 905, 908–11 (D.C. Cir. 1987) (considering a challenge to an alleged "policy of subjecting travelers returning from Nicaragua to intrusive border searches for intelligence-gathering purposes"); *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 85, 90–94 (D.D.C. 2013) (considering a challenge to "four separate policies or practices of the CIA that [allegedly] constitute[d] ongoing violations of the FOIA"). Mr. Robinson has not brought a policy or practice claim, and these cases have no bearing on his ability, as a prevailing Title VII plaintiff, to obtain individualized relief expressly authorized by Title VII.[8] The lone Title VII case cited by the District concerned the necessity of an injunction when "there was no specific intent to discriminate against" the plaintiff, *Johnson v. Brock*, 810 F.2d 219, 226 (D.C. Cir. 1987), a circumstance not applicable here, given the jury's finding of intentional discrimination.

---

[8] In addition, the District concedes that to this point, it has "failed to argue that there is a higher threshold for obtaining declaratory relief against a governmental policy." Def.'s Rule 59 Mem. at 5. Because the District failed to raise this argument in its previous post-trial briefing, it cannot raise it now through Rule 59(e). *See Exxon Shipping*, 554 U.S. at 485 n.5

The Court's injunction is appropriately tailored. It governs the District's treatment of only one person—Mr. Robinson—with respect to one program—the ATEU Overtime Program. *See Jean-Baptiste*, 958 F. Supp. 2d at 50 ("If granted, injunctions should be narrowly tailored and should generally apply only to the plaintiff where a class has not been certified."). It requires merely that the District provide Mr. Robinson with the same opportunities as other MPD officers, to the extent those opportunities become available. If the District were to re-activate the ATEU Overtime Program and exclude Mr. Robinson from it for discriminatory reasons, it makes sense that he should be able to challenge such action as a violation of this Court's order. This Court, as opposed to another court, would have the background knowledge to place Mr. Robinson's allegations in the proper context. The District has failed to show that this relief is manifestly unjust.

## B. Back Pay

The District also contends that the Court's back pay award, approximately $63,000, was manifestly unjust. *See* Def.'s Rule 59 Mem. at 3; *see also Robinson*, 341 F. Supp. 3d at 114 n.13. According to the District, this injustice is attributable to two errors. First, the District argues that the Court's back pay award was the product of Mr. Robinson's "mere speculation," which was insufficient to meet his burden under Title VII. *See* Def.'s Rule 59 Mem. at 4. Second, the District argues that it met its burden to show that Mr. Robinson failed to mitigate his damages, yet the Court, improperly, did not account for that factor in awarding back pay. *See id.* at 8–9. The Court will address, and reject, each alleged error in turn.

### 1. Basis for the Award

The District argues that Mr. Robinson failed to provide evidence justifying the amount of back pay the Court awarded. "Back pay is 'the difference between the actual wages earned and

the wages the individual would have earned in the position that, but for the discrimination, the individual would have attained.'" *Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir. 2005) (quoting *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1119–20 (3d Cir.1988)).  As noted, a court has "wide discretion" to award back pay to make a prevailing Title VII plaintiff whole. *Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C. Cir. 2002) (quoting *Barbour*, 48 F.3d at 1278); *see also* 42 U.S.C. § 2000e-5(g)(1).  The plaintiff must, however, provide the court with evidence to support such an award.  *See Barbour*, 48 F.3d at 1278 (holding that for a court to award back pay, "the plaintiff bears the initial burden of establishing the value of the lost salary and benefits"); *Gryder v. Dennin*, 427 Fed. App'x 844, 846 (11th Cir. 2011) (per curiam) ("[T]he plaintiff must present some evidence from which the finder of fact can begin a reasonable calculation of a back-pay award." (citing *Akouri*, 408 F.3d at 1343)); *Jefferson v. Milvets Sys. Tech., Inc.*, 986 F. Supp. 6, 8–9 (D.D.C. 1997) (rejecting the plaintiff's claim for back pay as "utterly speculative" when the plaintiff failed to provide "any supporting evidence" that he was unable to offset his retaliatory discharge with other employment).  That said, "calculating lost pay in a case like this necessarily involves some amount of estimation, precisely because it is not possible to reconstruct with perfect accuracy the events that would have occurred but for the defendant's unlawful conduct."  *Caudle*, 825 F. Supp. 2d at 78; *see also Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018) ("Backpay should be awarded even where the precise amount of the award cannot be determined." (quoting *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 628 (6th Cir. 1983))); *Akouri*, 408 F.3d at 1343 ("'[U]nrealistic exactitude is not required' as the back-pay calculation may be based on 'just and reasonable inference' of the missing or imprecise figure." (alteration in original) (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 260 (5th Cir. 1974))); *cf. Barbour*, 48

F.3d at 1280 ("[A] district court should not refuse to award front pay merely because *some* speculation about future earnings is necessary.").

Mr. Robinson's support for his back pay award was not entirely speculative. The District discriminatorily excluded Mr. Robinson from the ATEU Overtime Program between February 2014 and May 2015. *See* Pl.'s Mot. Back Pay ¶¶ 1–2, ECF No. 70. During this period, Mr. Robinson earned 525.75 overtime hours in the SEB. *See* Def.'s Opp'n Pl.'s Mot. Back Pay Ex. 4, ECF No. 75-4. In 2010, on the other hand, Mr. Robinson earned over 1,000 overtime hours in the ATEU. Def.'s Rule 59 Mem. at 7; Pl.'s Mot. Back Pay Ex. 2 at 21, ECF No. 70-2. It is undisputed that Mr. Robinson earned significantly less overtime in the years between 2010 and the discrimination period, but he credibly explained why he could not earn the same amount of overtime during those years as he would have sought during the discrimination period. *See Robinson*, 341 F. Supp. 3d at 110; Aff. of Mark Robinson ("Robinson Aff.") ¶¶ 10–13, ECF No. 70-1 (explaining that family circumstances, a lack of specialized SEB training, and an inability to access the ATEU Overtime Program caused him to work less overtime).[9]

The Court thus agreed with Mr. Robinson that it was appropriate to determine his back pay based on overtime earned by persons "similarly motivated" to him during the discrimination period—based on his work in 2010—rather than on overtime Mr. Robinson earned in the years immediately preceding the discrimination period. *See Robinson*, 341 F. Supp. 3d at 111. Courts in this jurisdiction have endorsed similar approaches in awarding back pay. *See Caudle*, 825 F. Supp. 2d at 77–78 (awarding the plaintiffs back pay based on comparisons of their "pre- and

---

[9] Mr. Robinson's motion for back pay was supported by his affidavit, *see* Pl.'s Mot. Back Pay Ex. 1, his overtime history, *see id.* Ex. 2, ECF No. 70-2; *id.* Ex. 4, ECF No. 70-4, his salary history, *see id.* Ex. 3, ECF No. 70-3, and a summary of ATEU Overtime Program hours earned by MPD officers during the discrimination period, *see id.* Ex. 5, ECF No. 70-5.

post-transfer overtime hours" and their "post-transfer overtime [hours] to . . . those of the officers who remained" in their unit); *Walker v. Dalton*, 89 F. Supp. 2d 20, 26–28 (D.D.C. 2000) (directing a magistrate judge to calculate the plaintiff's back pay based on the overtime hours earned by individuals occupying the position the plaintiff would have occupied, accounting for the plaintiff's motivation); *cf. Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 12 (1st Cir. 2012) (affirming the district court's decision to apply the "more accurate indicator" of overtime backpay—among multiple proposed approaches—based on pay stubs and the plaintiff's trial testimony). The Court determined that persons "similarly motivated" to Mr. Robinson during the discrimination period were those officers, forty-one in total, who worked at least 1,000 ATEU overtime hours during that period, as Mr. Robinson did in 2010. *See Robinson*, 341 F. Supp. 3d at 111; Pl.'s Mot. Back Pay Ex. 5, ECF No. 70-5. This approach was not speculative; it was based on Mr. Robinson's actual overtime hours and his sworn declaration.[10]

Further, the Court did not blindly accept Mr. Robinson's back pay calculation. Mr. Robinson argued that he would have worked 1,354 overtime hours in the ATEU Overtime Program during the discrimination period, *in addition* to his SEB overtime; 1,880 total overtime hours. *See Robinson*, 341 F. Supp. 3d at 113. This number was overly speculative because Mr. Robinson failed to show that he was capable of earning that many hours, and his past practices and shift schedule provided no support. *See id.* Instead, the Court determined that Mr. Robinson would have earned 1,354 *total* overtime hours during the discrimination period, the average

---

[10] In addition, the record indicated that Mr. Robinson's SEB shift schedule during the discrimination period would have allowed him to regularly work at least one eight-hour ATEU Overtime Program shift. *See Robinson*, 341 F. Supp. 3d at 112 n.9. There was thus no reason to doubt Mr. Robinson's assertion that he could have earned at least 1,000 ATEU overtime hours in 2014 and 2015, particularly given the flexibility provided by the ATEU Overtime Program in selecting overtime shifts. *See id.*

number of ATEU Overtime Program hours earned by similarly motivated officers. *See id.* at 114. In sum, based on record evidence of (1) Mr. Robinson's past overtime and (2) the amount of ATEU overtime earned by other MPD officers during the discrimination period, along with (3) a declaration from Mr. Robinson explaining why his 2010 overtime hours were most representative of his motivation during the discrimination period, the Court awarded Mr. Robinson back pay for 828 ATEU Overtime hours.[11] *See id.*

The District is not satisfied with this reasoning, but it has failed to show obvious error here, much less manifest injustice. First, the District argues that Mr. Robinson did not sufficiently explain why, but-for the District's discrimination, he would have been similarly situated to officers who earned more than 1,000 hours in the ATEU Overtime Program. *See* Def.'s Rule 59 Mem. at 7. But the Court found Mr. Robinson's explanation sufficient, and the District has provided no reason to upset that conclusion. Second, and relatedly, the District argues that Mr. Robinson's 1,000 ATEU overtime hours earned in 2010 were not all earned in the ATEU Overtime Program, so there is no basis to compare Mr. Robinson to officers who did earn 1,000 hours in that Program during 2014 and 2015, when Mr. Robinson was excluded. *See id.* at 7–8. But as discussed above, Mr. Robinson had access to multiple types of ATEU overtime opportunities in 2010, but would have had access only to the ATEU Overtime Program in 2014 and 2015, if not discriminatorily denied that access. While Mr. Robinson's proposed comparator group was imperfect, it was adequate and grounded in available data, and the District

---

[11] This number is in the ballpark of the approximately 700 ATEU Overtime Program hours the District asserts Mr. Robinson earned in 2010. *See* Def.'s Rule 59 Mem. at 8. And Mr. Robinson's 2010 hours were earned over twelve months, while he is entitled to back pay for fifteen. Thus, as Mr. Robinson notes, *see* Pl.'s Opp'n at 14 n.8, his back pay award is based on fewer ATEU Overtime Program hours per month—fifty-six—than he may have earned in 2010—sixty-one, *see* Def.'s Rule 59 Mem. at 8.

did not provide a more accurate comparator.  Third, the District notes that Mr. Robinson only earned more than 1,000 overtime hours in *one* year.  *See id.* at 7 & n.2.  But again, the Court credited Mr. Robinson's explanation for why that one year was a better basis for setting his back pay than the following years leading up to the discrimination period.  In short, the District's objections are unpersuasive.

The District characterizes Mr. Robinson's showing as speculative, but its own threadbare showing—or lack thereof—restricted this Court's ability to rule any other way.  This is particularly true given the Court's broad responsibility, in Title VII cases such as this, to grant "the most complete relief possible" to make the plaintiff whole.  *Lander*, 888 F.2d at 156 (quoting *Franks*, 424 U.S. at 764).  Because the Court again concludes that its back pay award was based on testimony, data, and "some amount of estimation," *see Caudle*, 825 F. Supp. 2d at 78, rather than Mr. Robinson's baseless speculation, it declines to hold that the award was manifestly unjust.

### 2.  Mitigation

The District also argues that Mr. Robinson failed to mitigate his damages.  Title VII states that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1).  "This creates a statutory duty to minimize damages on the part of Title VII claimants, which requires them 'to use reasonable diligence in finding other suitable employment.'"  *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1133 (D.C. Cir. 1999) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)).  While that duty falls on the plaintiff, the employer must show that the plaintiff failed to discharge it.  *See Fogg v. Gonzales*, 492 F.3d 447, 455 (D.C. Cir. 2007); *Jean-Baptiste*, 958 F. Supp. 2d at 44.

Here, then, the District must show that Mr. Robinson did not fully embrace the overtime opportunities available to him in the SEB. The District does not quibble with this standard. *See* Def.'s Rule 59 Mem. at 8. It does argue, however, that the Court unjustly concluded that it failed to meet the standard. *See id.* at 9–11. Having considered the District's arguments in the current round of briefing, the Court does not alter its initial conclusion.

The District's record evidence on this issue is simply too imprecise. First, the District notes that "[seventeen] sworn members in the SEB earned more non-ATEU overtime than" Mr. Robinson during the discrimination period. *See id.* at 9. However, as the Court previously noted, the District failed to provide any evidence that these seventeen officers had similar schedules to Mr. Robinson, such that Mr. Robinson had similar SEB overtime opportunities. *See Robinson*, 341 F. Supp. 3d at 112; Def.'s Rule 59 Mem. Ex. 3, ECF No. 86-3. Without that evidence, the Court had no basis to conclude that Mr. Robinson could have earned as much overtime as those officers, but chose not to. Second, the District points to Captain Glover's testimony that "[i]t would have been fairly easy [for an SEB officer] to accomplish 20 [overtime] hours in a week." Trial Tr. 18:16–17 (Mar. 14, 2018) (test. of Robert Glover). More specifically, Captain Glover testified that SEB officers could earn overtime covering presidential and vice presidential movements, "baseball on occasion," other sports games, parades, marathons, and protests. *See id.* at 14:2–17:16. But the District provided no evidence indicating when or how frequently these opportunities arose, other than Detective Glover's statement that "[a]ll three [SEB] shifts have opportunities . . . it is just a matter of what you want to work." *Id.* at 17:9–16.[12]

---

[12] And as the Court previously noted, *see Robinson*, 341 F. Supp. 3d at 112, many of these opportunities—baseball games, parades, and marathons, for instance—frequently occur during the day, when Mr. Robinson would have been working his regular SEB shift.

Not to mention, the District again ignored the ATEU Overtime Program's apparent flexibility compared to the SEB. Officers in the Overtime Program had access to shifts twenty-four hours a day, six days a week, and could schedule those shifts weeks in advance, around their personal schedules. *See* Robinson Aff. ¶¶ 17–18. SEB overtime, on the other hand, was scheduled, in part, by SEB supervisors rather than the officers themselves. *See id.* ¶¶ 8, 14. And the SEB's overtime opportunities were not ubiquitous; they were sporadic and depended on events outside of officers' control. *See id.* ¶ 15. It may be possible that Mr. Robinson could have squeezed in a few more hours of SEB overtime by cancelling family plans and otherwise rearranging his schedule. *See id.* ¶ 22b ("I worked all voluntary SEB overtime hours that I qualified to work and which did not conflict with family or personal plans."). But the District cites no case law, and the Court is aware of none, stating that "reasonable diligence" under Title VII, 42 U.S.C. § 2000e-5(g), requires a plaintiff to work inconvenient or inopportune shifts—shifts that he would not have to work absent discrimination—to mitigate damages, *see Berger*, 170 F.3d at 1133 ("The victim of discrimination . . . is 'merely required to make "reasonable efforts" to mitigate his loss of income, and only unjustified refusals to find or accept other employment are penalized under this rule.'" (quoting *Oil, Chem. & Atomic Workers Int'l Union v. NLRB*, 547 F.2d 598, 603 (D.C. Cir. 1976)).

Put simply, the District's conclusory assertions are not sufficient to show that Mr. Robinson passed up SEB overtime opportunities available within the confines of his specific shift schedule. In fact, the District did not identify a single, specific SEB overtime opportunity that Mr. Robinson declined.[13] It was not "fundamentally unfair in light of governing law" for the

---

[13] For instance, it may be true that Mr. Robinson could have covered the occasional Washington Capitals evening game, but the District did not identify any game that Mr. Robinson turned down.

Court to reject the District's wholly conclusory argument regarding an issue on which it bore the

burden of proof.[14] *Leidos*, 881 F.3d at 217 (quoting *Mohammadi*, 947 F. supp. 2d at 78).

## V. MOTION FOR ATTORNEYS' FEES

Finally, the Court considers Mr. Robinson's interim motion for attorneys' fees. *See* Pl.'s

Suppl. Mot. Fees ("Pl.'s Fee Mot."), ECF No. 81  Under Title VII, "the prevailing party" is

entitled to "a reasonable attorney's fee (including expert fees) as part of the costs."  42 U.S.C. §

2000e-5(k).  In awarding fees, a court must conduct a two-step inquiry. *See Craig v. District of*

*Columbia*, 197 F. Supp. 3d 268, 274–75 (D.D.C. 2016) (citing *Does I, II, III v. District of*

*Columbia.*, 448 F. Supp. 2d 137, 140 (D.D.C. 2006)).  First, the court must determine whether

the plaintiff is the prevailing party. *See id*.  Second, the court must determine whether the

plaintiff's fee request is reasonable, and if not, the Court must determine a reasonable fee. *See*

*Does I, II, III*, 448 F. Supp. 2d at 140.

In calculating a reasonable fee, the court must determine: (1) a reasonable hourly rate (or

"lodestar") for the services rendered by the plaintiff's counsel; (2) the number of hours

reasonably expended on the litigation; and (3) whether the plaintiff has shown that the case

justifies a lodestar enhancement or multiplier. *See Covington v. District of Columbia*, 57 F.3d

---

[14] The District also argues that it "presented sufficient evidence showing that [Mr. Robinson] failed to use reasonable care and diligence in seeking overtime opportunities." Def.'s Rule 59 Mem. at 11.  The District did not make this particular argument during its prior briefing, though it had access to the same evidence then. *See generally* Def.'s Opp'n Pl.'s Mot. Back Pay, ECF No. 75.  It may not now use a Rule 59(e) motion to make the argument for the first time. *See Leidos*, 881 F.3d at 217; *United States ex rel. Folliard v. Comstor Corp.*, No. 11-731, 2018 WL 5777085, at *6 (D.D.C. Nov. 2, 2018) ("[N]ewly raised arguments do not warrant relief under Rule 59(e)").  Not to mention, rather than identifying "evidence," the District attempts to shift its burden to Mr. Robinson: It notes that Mr. Robinson failed to give "a specific example of an overtime shift he could not work." Def.'s Rule 59 Mem. at 11.  But Mr. Robinson is not obligated to show that he exercised reasonable diligence; the District is obligated to show the opposite.  The District's cherry picked reference to Mr. Robinson's testimony is insufficient to that end.

1101, 1107 (D.C. Cir. 1995); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 38 (D.D.C. 2011). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). With respect to the number of hours expended, the court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Craig*, 197 F. Supp. 3d at 275 (quoting *Does I, II, III*, 448 F. Supp. 2d at 140). Along the same lines, if a plaintiff "achieved only partial or limited success," the court may conclude that "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," and it may reduce the award accordingly. *Hensley*, 461 U.S. at 436.

Mr. Robinson seeks $47,948.40 for work by his counsel, Kenneth McPherson and Leonard Pazulski, on the back pay, injunctive relief, and attorneys' fees briefing. *See* Pl.'s Fee Mot. at 8. The District does not challenge Mr. Robinson's entitlement to fees, nor does it challenge the hourly rate charge by his counsel.[15] Rather, the District argues that this Court should reduce Mr. Robinson's fee award by fifteen percent to account for his lack of success. *See* Def.'s Opp'n Pl.'s Fee Mot. at 4, ECF No. 87. The District also argues that Mr. Robinson miscalculated his fees, and that he included hours that should have been included in his previous fee motion. *See id.* The Court sides with the District, in part.

The Court reduced Mr. Robinson's last fee request by fifteen percent because (1) Mr. Robinson obtained far less at trial—$750—than he sought—$1,600,000; (2) Mr. Robinson obtained only slightly over half the back pay he sought; (3) Mr. Robinson did not receive the full

---

[15] The Court previously concluded that the fee matrix published by the United States Attorney's Office for the District of Columbia establishes reasonable hourly rates for this action. *See Robinson*, 341 F. Supp. 3d at 115–16, 122–23. The parties agree that Mr. Robinson's counsel are entitled to $602 per hour under that matrix, for work covered by the current fee request. *See* Pl.'s Fee Mot. at 3; Def.'s Opp'n Pl.'s Fee Mot. at 4, ECF No. 87.

measure of injunctive relief he sought; and (4) the District prevailed in part on key dispositive motions. *See Robinson*, 341 F. Supp. 3d at 120. It is well-established that this type of success-based fee reduction is appropriate. *See Hensley*, 461 U.S. at 434–36; *Craig*, 197 F. Supp. 3d at 283. The Court sees no reason to alter that approach here, given that Mr. Robinson seeks fees for the same set of briefing the Court covered in its prior order. *See* Pl.'s Fee Mot. at 2 (seeking fees for work on "back pay and . . . injunctive relief and attorney's fees").

Mr. Robinson attempts to distinguish his current fee request from his last request, to no avail. He argues that the services covered by his current request "relate exclusively to [his] successful claims." Pl.'s Reply Supp. Fee Mot. at 6, ECF No. 88. This is true in the abstract; Mr. Robinson received *some* injunctive relief, *some* back pay, and *some* attorneys' fees. But he did not receive the full measure of relief sought. The Court reduced Mr. Robinson's last fee request accordingly, and it does so here for the same reason.[16]

Further, it does appear that Mr. Robinson miscalculated his fees. His initial motion seeks fees for 64.2 hours of Mr. McPherson's time, at $602 per hour. *See* Pl.'s Fee Mot. at 8; Pl.'s Fee Mot. Ex. 2 at 13–16, ECF No. 81 (Mr. McPherson's current billing statement). According to Mr. Robinson, this totals $38,940.40. *See* Pl.'s Fee Mot. at 8. As the District notes, however, the correct total is $38,648.40. *See* Def.'s Opp'n Pl.'s Fee Mot. at 4–5; Pl.'s Fee Mot. Ex. 2 at 16.

---

[16] Mr. Robinson asserts that "the measuring stick for adjudging fee claims is whether the legal services relate to *meritorious* claims, not victorious claims." Pl.'s Reply Supp. Fee Mot. at 6. But he cites no case law or statute in support of this proposition. And the case law seems to contradict him. *See Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565, 1572 (D.C. Cir. 1993) (holding that the district court was "on solid legal footing" when it reduced the plaintiff's fees based, in part, on a comparison of the damages sought to the damages ultimately obtained); *Berke v. Fed. Bureau of Prisons*, 942 F. Supp. 2d 71, 79–80 (D.D.C. 2013) (reducing the plaintiff's fees by forty percent due to "the limited nature of the [injunctive] relief obtained by [the] plaintiff"); *Roseboro v. Billington*, 618 F. Supp. 2d 85, 88–89 (D.D.C. 2009) (reducing the plaintiff's fees by one-third because the plaintiff sought damages, reinstatement, and other relief, but was awarded only personnel record expungement).

In reply, Mr. Robinson claims that Mr. McPherson actually worked 64.7 hours, but he provides no record evidence in support of this contention. *See* Pl.'s Reply Supp. Fee Mot. at 2–3. The Court will not comb Mr. McPherson's billing records for that missing half hour. It will thus use $38,648.40 as its base fee for Mr. McPherson, before adjustments.

Finally, although Mr. Robinson seeks fees for certain hours that he could have included in his last fee request, the Court will not impose the draconian penalty of rejecting those hours. Mr. Robinson's last request sought fees for work "through June 8, 2018." Pl.'s First Mot. Fees at 2, ECF No. 63. Despite this statement, however, the record indicates that Mr. Robinson sought fees for Mr. McPherson only through June 7, and for Mr. Pazulski through March 9. *See* Pl.'s First Mot. Fees Ex. 8 at 87, ECF No. 63-1 (Mr. McPherson's last billing statement); Pl.'s First Mot. Fees Ex. 9 at 91, ECF No. 63-1 (Mr. Pazulski's last billing statement). Mr. Robinson now seeks fees for June 7 and beyond. *See* Pl.'s Fee Mot. Ex. 2 at 13; Pl.'s Fee Mot. Ex. 4 at 19, ECF No. 81 (Mr. Pazulski's current billing statement). The District seems to suggest that Mr. Robinson waived his right to seek fees for work performed on June 7 and 8 by not including those fees in his last motion. Def.'s Opp'n Pl.'s Fee Mot. at 5–6. But the District cites no case law to support that proposition.[17] The Court thus declines to adopt the District's approach. And to the extent that the fee request for work on June 7 and 8 is technically untimely, Plaintiff is granted leave to submit it. *See* Fed. R. Civ. P. 6(b).

---

[17] The "law-of-the-case doctrine," on which the District relies, is inapplicable because it "comes into play only with respect to issues previously determined." *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 123 (D.D.C. 2018) (quoting *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)). The Court did not previously rule on the fees Mr. Robinson seeks here, even those for work done on June 7 and June 8.

*         *         *

The Court awards Mr. Robinson attorneys' fees for his counsels' work, performed through November 5, 2018, as follows.  After re-calculating Mr. McPherson's fees, Mr. Robinson seeks a total of $47,656.40.  The Court deducts fifteen percent from this total to account for Mr. Robinson's failure to obtain the full measure of relief sought.  Thus, Mr. Robinson is entitled to $40,507.94.

## VI.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the District's Motion for Judgment as a Matter of Law (ECF No. 85) is **DENIED**; the District's Motion to Alter or Amend Judgment (ECF No. 86) is **DENIED**; and Mr. Robinson's Supplemental Motion for Attorneys' Fees (ECF No. 81) is **GRANTED IN PART**.  It is **FURTHER ORDERED** that Mr. Robinson is awarded **$40,507.94** in attorneys' fees.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 8, 2019                                 RUDOLPH CONTRERAS
                                                    United States District Judge